(Superior Court of Cincinnati.)

FREDERICK L. FELTON and JAMES M. OLMSTEAD, Receivers of the Kanawha Lumber Company, v. THE GERMAN NATIONAL BANK OF CINCINNATI.

———

When a bank discounts commercial paper held and endorsed by a corporation and passes the proceeds to the credit of the company; said company leaving for deposit with the bank only the proceeds of such discounted paper, and where it affirmatively appears that the bank discounted such paper solely upon the faith of representations of solvency made by the company endorsing the same, and not upon the faith of the responsibility of the makers thereof, the bank has an equitable right to set off the amounts of such paper as against the deposit sought to be recovered by a receiver appointed for such company, although such paper was not due and payable at the time of the appointment of said receiver, if it appear at the trial that the bank was unable to collect from the makers of the notes because of the insolvency of such makers.

In such case the right of set-off arises not from statute, but from the equitable rule of mutual credits.

———

Plaintiffs, as receivers of the Little Kanawa Lumber Company, seek to recover from the defendant, the sum of $3243.28 with interest from July 18, 1893, being the amount claimed to be due the company as depositors in the bank at the time said company went into the hands of the receivers.

The defendant admits that at the time of the appointment of the receivers the Little Kanawha Lumber Company was a depositor for the amount prayed for in the petition, but claims the right to set-off as against such amount the sum of $3023.95, being the amount of indebtedness which it is claimed was owing to the bank from the company as endorser upon three certain promissory notes, discounted and held by the bank.

The case was submitted to the court upon an agreed statement of facts, from which, substantially, the following appears. In January, 1893 the Little Kanawha Lumber Company being a holder of a large amount of commercial paper and desiring to have the same discounted by the defendant opened an account with said defendant and from time to time endorsed paper which was discounted by the bank and the proceeds thereof were passed to the credit of the lumber company. The lumber company, at no time, had funds on deposit with the bank other than the proceeds of the notes which were endorsed by it, and discounted by the bank. Prior to opening the account with the bank, the lumber company was notified that the bank did not buy any outside paper, but simply discounted for its customers, and that it would not discount the paper in question unless the company contemplated keeping an account with it. As a condition precedent to discounting the paper in question, and passing the proceeds to the credit of the lumber company, the bank required from said company a statement of its affairs, which statement was furnished on February 13, 1893, and from which it appeared that the lumber company was thoroughly solvent. As a matter of fact the company at that time was insolvent, and went into the hands of the receivers the following June. The lumber company was not the maker of any of the notes discounted by the bank, but appeared only as endorser thereon, but it appears from the agreed statement of facts, "that the bank had no knowledge of the responsibility of the makers of the paper, but required a statement from the Kanawha Lumber Company of its financial responsibilities * * * and that it carried the proceeds of said paper to the credit of the Kanawha Lumber Company, that it might check thereon, upon the faith of the responsibility, of the Little Kanawha Lumber Company alone." Shortly after the company went into the hands of the receivers, said receivers demanded of the bank the amount due the company as a depositor, and were promptly advised by the bank that one of the makers of the paper which it had discounted as aforesaid had made an assignment, and that a portion of the other paper so discounted might not be met at maturity, and that the defendant would hold enough of the deposit account to protect such notes when they

should mature, if unpaid. The notes upon which the bank claims the right to set-off were not due at the time of the appointment of the receivers, but became due shortly thereafter, and by reason of the insolvency of the makers thereof, the bank was unable to collect from the makers upon the following notes: one of Andrew Leatherby & Company for $1999.70, due July 27th, 1897; one of I. W. Livesey and Company for $703.80, due August 6th, 1893, and one of W. Castleton, for $314.99, due July 6th, 1893, all maturing after the appointment of the receivers. Upon the maturity of these notes, they were all duly protested for non-payment, and because of the failure of the bank to collect from the makers, it is sought to set-off the amount, together with interest and protest fees, amounting in all to the sum of $3023.95, against the claim of the receivers. The defendant tenders to plaintiffs the difference between the aggregate sum due upon said notes, and the amount due the lumber company as depositor, being the sum of $219.33, which the plaintiffs have declined to accept.

It is conceded that the bank has no legal right of set-off herein. Section 5077 provides, "that when cross-demands have existed between persons under such circumstances that if one had brought an action against the other, a counter claim or set-off could have been set up, neither can be deprived of the benefit thereof by assignment by the other or by his death, but the two demands must be deemed to compensate so far as they equal each other."

As the notes in question held by the bank did not mature until after the appointment of the receivers, it is evident that here is no legal right of set-off, but the defendant bases its claim upon an equitable right of set-off which is quite independent of the statute. It must also be conceded to be the law of this state, that as between parties primarily liable an equitable right to set off some times arises upon a debt not due at the time of an assignment made by or the appointment of a receiver for a creditor. Thus, in

Armstrong, Receiver v. Warner, 49 Ohio St., 376, it is said: "When the holder of a claim not yet due arising upon contract becomes insolvent, and transfers the same before maturity, and the debtor at the time of the transfer holds a similar claim then due against the assignor, his right of set-off is preserved against the assignee when the latter's cause of action arises." And on page 388 the court says: "The remedy of set-off has been much enlarged in equity and is there administered in cases where, under the strict rules of law it would not be available * * * And generally equity will enforce the right of set-off by decreeing compensation of mutual demands so far as they equal each other, where they have grown out of the same or connected transactions, or the one has formed, in whole or in part, the consideration of the other, and the party against whom the set-off is asserted is insolvent."

The same principle is announced in the case of German American Savings Bank v. Grossman, 15 C. C., 378, where it was held that "A bank having a deposit subject to check form an insolvent depositor, who is also indebted to the bank may apply and set off that deposit against the indebtedness of such insolvent debtor of the bank, although the same is not yet due."

Again, in the case of Shunk, Assignee, v. Merchants National Bank, 16 W. L. B., 353, it was held that, "When a depositor in a bank becomes insolvent, the bank holding notes not yet due, which it had discounted for him, and the proceeds of which notes had gone into his deposit account, the bank can withhold enough of the deposits to protect such notes as against the insolvent or his general assignee, though not against bona fide holders of checks for value."

This must be conceded to be the law in Ohio, although there are many well considered cases in other states holding directly the contrary.

The same principle is laid down by the supreme court of Tennessee in the case of the Nashville Trust Company v. the Fourth National Bank in a very

able and exhaustive opinion reported in the 18th Southwestern Reporter, 822. So also in the case of Scott v. Armstrong, 146 U. S., 449, the supreme court of the United States lays down a similar doctrine. It was there held that the ordinary equity rule of set-off in case of insolvency is, "that where the mutual obligations have grown out of the same transaction, insolvency, on the one hand justifies the set-off of a debt due on the other." And on page 508 Mr. Chief Justice Fuller uses the following language: "Indeed, natural justice would seem to require that where the transaction is such as to raise the presumption of an agreement for a set-cff it should be held that the equity that this should be done is superior to any subsequent equity not arising out of a purchase for value without notice."

So that, as between parties primarily liable, it must be conceded that the equity in favor of general creditors arising by reason of an assignment or receivership is not superior, but subordinate to the right of set-off on the part of the holder of and obligation against the insolvent, where the claims formed the basis of a mutual credit arising out of the same transaction, notwithstanding the claims sought to be set-off were not due at the time of the insolvency. But the plaintiffs contend, that inasmuch as the lumber company was not the maker of the notes in question, but merely endorser thereon, and not therefore, primarily, but only conditionally liable, that the right of set-off should not be allowed in this case. That an endorser is not primarily liable is conceded, for it is stated in House, Assingee. v. Vinton National Bank, 43 Ohio St., 356 "That the undertaking of an endorser is collateral and conditional. If he is not duly notified of the nonpayment and there is no valid excuse for such want of notice he is discharged." And in Daniels on Negotiable Instruments section 669a speaking of the liability of an endorser it is said: "He engages that the bill or note will be accepted or paid as the case may be according to its purport but this engagement is

conditional upon due presentment on demand and notice." So it must be conceded that at the time of the insolvency of the lumber company the bank had no absolute claim but only a conditional claim against the lumber company upon the notes in question. But it will be observed that the reasons for allowance in equity of a set-off upon a claim not due, against one which is due at the time of the insolvency is based upon the presumption of an agreement for such set-off; and we can see no reason why under certain conditions such a presumption may not be raised in a case where the insolvent is only conditionally and not primarily liable upon an obligation not due at the time of the insolvency.

The reasons for the allowance of the equitable right of set-off are clearly stated in Story's Equity Jurisprudence vol. 2 page 1435 as follows: "In the first place it would seem that independently of the statutes of set-off, courts of equity in virtue of their general jurisdiction, are accustomed to grant relief in al cases where, although there are mutual and independent debts, yet there is a mutual credit between the parties founded at the time upon the existence of some debt due by the crediting party to the other. By mutual credit, in the sense in which the terms are here used we are to understand a knowledge on both sides of the existing debt due to one party, and a credit by the other party, founded on and trusting to such debt as a means of discharging it."

And in Scott v. Armstrong, 146 U. S. supra, the court commenting upon this definition says: "This definition is hardly broad enough to cover all the cases, where, as the learned commentator concedes that there being a connection between the demands, equity acts upon it and allows a set-off under peculiar circumstances. Courts of equity frequently deviate from the strict rule of mutuality when the justice of the particular case requires it; and the ordinary rule is, that where the mutual obligations have grown out of the same transaction, the insolvency on the one hand justifies the set-

off of the debt upon the other.''

In the case at bar it is manifest from the agreed statement of facts that the credit was not extended by the bank to the lumber company upon the faith of the responsibility of the makers of the notes in question but that the credit was extended solely upon the faith of the responsibility of the lumber company as endorser thereon, and it is manifest that in incurring the obligation to the lumber company by extending it a credit upon its books, the bank, under the particular circumstances of this case had a right to, and did credit itself with the claim against the lumber company upon said notes, and that it must have been within the contemplation and understanding of the parties that the bank should look to its debt to the lumber company as a means of discharging the obligation of the lumber company to it. In other words it seems to be a case of mutual credit as defined in Story's Equity Jurisprudence, section 1435. It must therefore be presumed to have been the understanding between the parties, that the bank would have a right to set-off its conditional claim upon the notes against the absolute claim of the lumber company against the bank, so that in the event of the insolvency of the lumber company, it would have an equitable claim to hold the amount of deposit to the credit of the lumber company until the amounts of the bank's conditional claim could be fixed and ascertained.

We find no authority in Ohio directly upon this proposition, but we think under the circumstances of this particular case, that the equities in favor of the general creditors of the lumber company, arising by reason of the insolvency of that company, are not superior but subordinate to the equities of the bank.

We find, however, a direct authority upon the question in ex parte Howard National Bank, 2nd Lowell's Decisions, 487, where it is held: "That a deposit in a bank becomes upon the bankruptcy of the depositor a security for a payment pro tanto of his liabilities to the bank by the operation of the law of mutual credit. The deposit should be set-off against the aggregate amount of the notes of the bank on which he is principal debtor, or on which, he being endorser, the real principals are insolvent. Solvent principals, for whom the bankrupt is surety, must pay their own notes. * * * It seems if the bank has contingent or unliquidated claims against the bankrupt depositor, his deposit may be retained by the bank until it is ascertained what the provable debt is, if any, and then it can be used in set-off so far as is necessary.''

In that case a set-off was allowed by the bank against the bankrupt upon a note not due at the time of the bankruptcy, and upon which the bankrupt was liable only as endorser. The same general proposition is stated in Morse on Banks and Banking, 3rd edition, section 337, where it is said: "If the debt be contingent in character, or if it be a claim for unliquidated damages arising out of a contract, then the bank may retain possession of the deposit until such time as the provable indebtedness shall be ascertained when the deposit may be set-off against it.''

Plaintiffs rely in support of their position upon certain language used by the Supreme Court of the United States, in the case of Yardly v. Philler, 167 U. S., 360, where the court says: "Obviously the right to set-off recognized in Scott v. Armstrong, 146 U. S., is to be governed by the state of things existing at the moment of insolvency, and not to conditions thereafter created." But a persual of this case will show that an entirely new right arose after the insolvency. Of course, it cannot be contended that after the insolvency, the debtor could thereby acquire by purchase or otherwise an obligation against the insolvent creditor, which it did not hold either primarily or conditionally against the creditor before the insolvency. This is evidently what the supreme court meant in the language used in the case of Yardy v. Philler.

In the recent case of Central Co. v. Buchanan, (90)? Fed. Rep., 459, it

is said, "So, courts of equity of the United States have been peculiarly alert to prevent the defeat of an equitable right of set off by the interposition of assignments, receiverships or statutory liquidations, and to extend the right whenever there appeared any substantial equity in favor of the claim."

Plaintiffs also rely upon the case of Chipman and Holt v. Bank, 120 Penn. State, page 86. Indeed the broad proposition laid down by the court in that case, would seem to be an authority in their favor. It was there stated that in an action by an assignee for the benefit of creditors, to recover from a bank a balance to the credit, and subject to the check of the assignor, at the date of the assignment, the bank cannot set-off notes or drafts endorsed by and discouned for the assignor before, but maturing after the assignment. But in that case it does not appear that the deposit for which the suit was brought, was the proceeds of the discounted drafts and notes, nor does it affirmatively appear in that case that the credit extended by the bank was solely upon the responsibility of the endorser of such drafts and notes. Therefore, in such case it must be presumed that the credit was extended by the bank primarily upon the responsibility of the makers of such notes, and that there was therefore, no mutual credit between the parties, and no understanding or agreement for a set-off between them. Furthermore that case the court bases its conclusions upon the broad proposition maintained by many courts of this country, that a claim not due at the time of the insolvency cannot be set-off against one, which is due at such time. The reason being that the status of the assignor's debtors as well as their creditors is fixed by the assignment in trust for the latter, and that the right of action against the assignor accruing subsequent to the assignment must necessarily be subordinate to the rights of creditors of the assignor; but as has been shown, this is not the law in this state, nor is it the law as has been declared by the Supreme Court of the United States."

Each case as it arises must be determined by the circumstances of that particular case, and the criterion must be what must have been the understanding between the parties at the time with reference to the claims being a mutual credit, or the basis of a set-off, the one against the other.

Under the circumstances of this particular case, we think the defendant had the right of set-off claimed in its answer. The plaintiffs, therefore, are entitled to judgment for the amount admitted by defendant as a balance upon such mutual credit account.

J. W. Bannon, for Plaintiff.
Chas. H. Sephens, for Defendant.