Maddox & Maddox, Washington, C. H., for plaintiff in error.

John P. Phillips, Chillicothe, and J. D. Withgott, Chillicothe, for defendant in error.

## EDGE v STUCKEY

Ohio Appeals, 4th Dist, Ross Co

Decided July 27, 1932

BLOSSER, J.

The evidence discloses that Miss Stuckey had been since the bank's organization a director, vice president and a valuable customer; that Miss Vera V. Veail, the cashier, as a matter of accommodation looked after some of the financial affairs of Miss Stuckey in connection with the bank, as she also did for some other of the bank's patrons. After the failure of the bank Miss Veail, acting as the agent of the plaintiff, notified Mr. Edge that Miss Stuckey had owned his note since April, 1929. The defendant claims that this was the first notice he had that the bank was no longer the owner of the note. He stated that he was a lawyer and knew his rights and that he kept on deposit a large sum of money which he would not have kept except that he believed that in the event of the bank's failure he would be able to setoff his deposit against his indebtedness. All of the defendant's dealings with the bank, including the renewals of the note and the payments of interest, were conducted through Miss Veail, the cashier. The evidence discloses that when the bank was in need of funds Miss Stuckey disposed of some of her securities, including government bonds, and that she purchased a number of notes from the bank, including the defendant's note for which she paid in cash the face value with accrued interest. While she was a vice president of the bank and attended the monthly meetings of the directors she was not an active officer. It is the claim of the defendant that Miss Stuckey through her official position knew of his deposit, and that through the knowledge and acts of her and other officers of the bank he was misled into keeping his money on deposit and thus prevented from having a setoff of his deposit against his indebtedness to the bank. There is no evidence that Miss Stuckey had actual knowledge that he was a depositor. While it is to be presumed that from her official position she had a general knowledge of the bank's affairs it is not to be inferred and it is not likely that she had knowledge of all of the bank's four thousand depositors.

With reference to negotiable instruments §8157 GC provides among other things:

"3. That he took it in good faith and for value.

4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It is not claimed that there is any defect in the title. §8161 GC provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating it, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The law is clear that the defendant would have had the right to a setoff in the amount of his deposit in a suit on the note by the bank, the original payee of the note.

"A setoff against a payee of an instrument by the maker is not an infirmity in the instrument, and the fact that the holder at the time of purchase knew of the insolvency of the payee but not the setoff, does not prevent him from being a holder in due course."

Orr v Barnett et, 216 N.W. (S. D.) 347.

Brannan's Negotiable Instruments Law (5th Ed.), 520.

In 24 R. C. L., 820 it is said:

"The general rule is that commercial paper negotiated for value before maturity is not subject to setoff or recoupment; a different doctrine would essentially check its circulation and embarrass merchantile operations."

23 L. R. A., 325, note. To the same effect is Pettee v Prout, 69 Mass. (Gray), 502, the opinion being by Chief Justice Shaw.

But conceding that Miss Stuckey had knowledge that the defendant carried a deposit with the bank, such knowledge would not prevent her from being a holder in due course. **Stanberry v Smythe, 13 Oh St, 495;**

2 Daniel on Negotiable Instruments, §§1435-1437.

The rule is thus stated in **8 C. J. 804:**

"The doctrine of setoff and counterclaim as applied to negotiable paper is not available against a bona fide holder in due course. This is true, it is held, even though the transferee purchased with notice of the claim."

The note in this case was purchased a year prior to the closing of the bank and the evidence does not show that Miss Stuckey at that time thought the bank was insolvent. The evidence does disclose, however, that the bank was in need of funds and proceeded to sell some of its negotiable paper. Under these circumstances Miss Stuckey is not to be condemned for the purchase of the note. Both the plaintiff and defendant were stockholders and in aiding the bank the plaintiff was assisting all of the stockholders, including the defendant. Miss Stuckey having purchased the note for full value before maturity, and there being no defect in the title and no infirmity in the instrument, the only remaining question is as to her good faith in the transaction.

The defendant urges that Miss Veail was acting as the agent of the plaintiff in her dealings with him; that Miss Stuckey is to be charged with the acts of her agent; that Miss Veail, having received the interest from the defendant and having arranged for the renewals of the note, was called upon by the rules of good ethics and good faith to have told him that the note no longer belonged to the bank but to Miss Stuckey. The question is not free from difficulty. Under the authorities already cited no notice to the payee was required under the law. In the case of Orr v Barnett, supra, it was held that knowledge of the bank's insolvency did not entitle the maker of a note to a setoff against its claim for deposits which he could have asserted against the bank except for the transfer.

The evidence in this case as to the defendant's knowledge of the transfer of the note is in conflict. On the occasions of the renewal of the note he saw the endorsement stamped on the back of the note which was indorsed without recourse. Miss Veail stated that she erased the endorsement in his presence. He stated in substance that he knew that the notes had been transferred but thought they had been put up as collateral. This would seem to indicate that he had knowledge that the note had been transferred from the bank into the hands of another party. The defendant in testifying in his own behalf stated that he had known for a long time that the bank was in bad condition and that even with this knowledge he purchased ten shares of its capital stock. With this knowledge the defendant continued to permit his deposit to remain in the bank. If Miss Stuckey knew that the bank was in a precarious condition then both the plaintiff and defendant were similarly situated as to their knowledge of its condition. As a reviewing court must indulge every presumption in favor of the judgment of the trial court we are not disposed to hold that the finding of that court was manifestly wrong in holding that the defendant was not deceived by the plaintiff's conduct.

The defendant claims that the court erred in sustaining objections to evidence of deposits of Mr. Edge in names other than his own and which he stated belonged to him. In no event could the plaintiff be presumed to know that the defendant was the owner of the deposits in names other than his own. There is no evidence that the plaintiff had actual knowledge of the deposits and the law presumes that a deposit belongs to the person in whose name it is entered. **7 C. J. 639.** In view of the further fact that knowledge of defendant's deposits by the plaintiff would not have enabled the defendant to setoff such deposits in a suit on the note by Miss Stuckey, a bona fide holder in due course, the trial court properly rejected the evidence of the deposits.

Upon a review of the entire record we do not find any prejudicial error and the judgment is affirmed.

MAUCK, PJ, and MIDDLETON, J, concur.