## Pennsylvania Company, etc., v. Harrison

*Aaron S. Swartz, Jr.*, and *Louis M. Childs, II*, for plaintiff.

*Thomas Hallman*, for defendant.

KNIGHT, J., March 10, 1933.—The defendant made a note, payable to himself, which he transferred by endorsement to Merion Title & Trust Company, for value received. Merion Title & Trust Company transferred the note by endorsement, before maturity, to the plaintiff, "as and for additional and further security for previous loans, advances, moneys, and charges due the plaintiff by Merion Title & Trust Company."

The affidavit of defense avers that on October 26, 1931, the date of the note, the officers of Merion Title & Trust Company knew that their bank was insolvent, and that the plaintiff on that date or the day following made an examination of the affairs of Merion Title & Trust Company and by reason thereof also knew the institution was insolvent and further knew that this defendant was a depositor in the now closed trust company.

Paragraph 12 of the affidavit further avers that "notwithstanding the knowledge that the plaintiff acquired as to the deposits of your deponent in Merion Title & Trust Company, of Ardmore, as aforesaid, the plaintiff took the note of your deponent in an unlawful endeavor to deprive your deponent of his right to set off the amounts due him by the said Merion Title & Trust Company of Ardmore."

In disposing of the present motion, we deem it necessary only to consider if the plaintiff was a holder in due course.

Section 52 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, provides: "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The first two conditions are complied with in the present case, and it also appears that the plaintiff gave value for the note, as section 25 of the Negotiable Instruments Law declares that an antecedent or preëxisting debt constitutes value.

Did the plaintiff take the paper in good faith? The affidavit avers that Merion Title & Trust Company was insolvent when it negotiated the note to the plaintiff, that both the officers of the Merion and the officers of the plaintiff knew of the fact, and that the plaintiff, also knowing that the defendant was a depositor, took the note in order to deprive the defendant of his right of set-off.

Assuming, as we must, that all this is 'true, does it convict the plaintiff of commercial bad faith? We may eliminate all question of the good faith of Merion Title & Trust Company, for the good faith referred to in the act means the good faith of the transferee, the good or bad faith of the transferor being immaterial: 8 C. J. 495, sec. 705.

There can be no doubt that the defendant had the right to set off his deposit in Merion Title & Trust Company against any note due by him to the trust company, and the affidavit avers that the plaintiff had actual knowledge of the deposit of the defendant in the Merion and therefore knew of the existence of the set-off against the obligation.

Was this existing set-off an infirmity or defect in the title of Merion Trust Company to the note when it negotiated the instrument to the plaintiff?

"A set-off against a payee of an instrument by the maker is not an infirmity in the instrument, and the fact that the holder at the time of purchase knew of the insolvency of the payee but not the set-off, does not prevent him from being a holder in due course": Brannan's Negotiable Instruments Law (5th ed.), 520.

"The doctrine of set-off and counterclaim as applied to negotiable paper is not available against a bona fide holder in due course. This is true, it is held, even though the transferee purchased with notice of the claim": 8 C. J. 804, sec. 1063.

"The general rule is that commercial paper negotiated for value before maturity is not subject to set-off or recoupment; a different doctrine would essentially check its circulation and embarrass mercantile operations": 24 R. C. L. 820, sec. 28.

It must be constantly borne in mind that the only defense made against the note here in suit is one of set-off. The validity of the obligation itself is not questioned; in fact, it was affirmed by the defendant making a payment on account.

We have been unable to find any Pennsylvania case where the facts were similar to the facts in the case at bar, but in Orr v. Barnett et al., 51 S. D. 607, 216 N. W. 347 (1927), it was held that a payor cannot set off a deposit in an insolvent bank, the payee, against the holder of a note acquired before maturity and for value, the court holding:

"Right of set-off is not an 'infirmity' or 'defense' within Rev. Code 1919 [which has the same provisions as our own Negotiable Instruments Law], defining holder in due course."

In Edge v. Stuckey, 42 Ohio App. 462, 182 N. E. 517 (1932), the syllabus says:

"A depositor of a bank can not set off the amount of his deposit in a suit against him, brought after the failure of the bank, on a promissory note given by him to the bank, and by it sold and transferred to the plaintiff, who purchased it for value before maturity, even though the plaintiff at the time of purchase knew of the deposit.

"A right of set-off against the payee of a promissory note by the maker is not an infirmity in the instrument."

We are therefore of the opinion that the defendant's right of set-off was not an infirmity or defect in the title of the note, even if the existence of the deposit was known to the plaintiff.

The affidavit avers that the note was acquired by the plaintiff for the purpose of depriving the defendant of his right of set-off. Was this such commercial bad faith as to prevent the plaintiff from asserting that it is a holder in due course?

The defendant answers this question in the affirmative, and relies on a line of cases holding that one to whom an instrument is transferred for the purpose of shutting out a defense is not a bona fide holder: Eyre v. Yohe et al., 67 Pa. 477; Reznor v. Supplee et al., 81 Pa. 180; Louchheim v. Maguire et al., 6 Pa. Superior Ct. 635; Haun v. Trainer, 190 Pa. 1.

It will be noted that in some of these cases the averment was that the note was negotiated after maturity; in others, it was averred that the payee, and not the holder, was the real owner; in all of them there was some defect or infirmity in the title of the payee, and in none of them was the defense of set-off advanced.

In Fehr v. Campbell, 288 Pa. 549 (1927), a case where there was a defect in the title of the note, Chief Justice Moschzisker in the opinion says (p. 558):

"The freedom from the defense of prior equities afforded to a holder in due course is an extraordinary protection, which, although having its origin in the law merchant, is closely akin to similar protection given in other types of cases by courts of equity; and running through all the authorities dealing with holders in due course we find the principle, not always stated, perhaps, that he who seeks the protection given one in that position must have dealt fairly and honestly in acquiring the instrument in controversy and in regard to the rights of all prior parties; this is the kind of good faith which the law demands, and the principle is closely analogous to the equitable doctrine of clean hands. As said in Goodman v. Simonds, 20 How. (U. S.) 343, 366, 'Everyone must conduct himself honestly in respect to antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities.' Again, in Adams v. Ashman, 203 Pa. 536, 542, we find the following: 'The manner in which the note was handled . . . did not exhibit on the part of the plaintiff that *entire good faith* which equity exacts of one who would deprive a defendant of the right to set up the true condition of affairs as a defense.' "

One of the tests of good faith often applied by the courts is whether the note was taken in the ordinary course of business: did it form part of an usual and regular transaction?

If, as averred, the plaintiff took this note for the purpose of depriving the defendant of his right of set-off, can it be said that it was taken in the ordinary course of business; and can we say as a matter of law that the plaintiff exercised that good faith described in Fehr v. Campbell, supra? The question, if not new, is at least unusual and involved in such doubt that we are of the opinion the bona fides of the transaction should be submitted to the jury, as it is only in clear cases that we may give judgment on the pleadings.

And now, March 10, 1933, the rule for judgment for want of a sufficient affidavit of defense is discharged, and the plaintiff required to answer the new matter set out in the affidavit within 15 days of this date.