Common Pleas Court of Allen County.

RECONSTRUCTION FINANCE CORP. V. HOWELL MOTOR CAR CO., ET AL.

Decided February 7, 1934.

*John W. Bricker,* attorney general, and *John L. Cable,* special counsel for plaintiff.

*Wheeler, Bentley, Neville & Cory,* and *Meredith & Meredith,* for defendants.

EVERETT, J.

This cause came on to be heard upon the demurrer of the plaintiff to the second, third and fourth defenses of the answer of the defendant, C. L. Steer, upon the ground that such defenses do not state facts sufficient to constitute a defense. The demurrer was submitted to the court upon the briefs of the parties and pleadings.

It is contended by the defendant that the demurrer of the plaintiff to the answer searches the record and reaches back to the petition. There is no question but what this is the law in Ohio, so the court will not dwell upon this contention. It is further contended by the defendant that the petition does not state facts sufficient to constitute a cause of action against C. L. Steer. It is claimed that the note does not carry the endorsement of the payee, The Lima First American Trust Company, and nothing is said in the petition to show that the Reconstruction Finance Corporation is owner or holder in due course of the note sued upon. A copy of the note is attached to the petition, which shows the absolute guaranty of payment by C. L. Steer. It is true it does not bear the endorsement of the Lima First American Trust Company. Section 8154, General Code of Ohio provides for the transfer of negotiable instruments without endorsement. Section 8156, General Code, provides:

"The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument."

This action is brought upon the short form of petition, which is provided by Section 11,334, General Code of Ohio. It is provided in said section that:

"It shall be sufficient for a party to set forth a copy of the account or instrument, with all credits and endorsements thereon, and to state that there is due him, on said account or instrument, from the adverse party, a specified sum which he claims with interest."

The petition in this case complies with this provision of the statute, so that this contention of defendant is not well taken.

The court now comes to the consideration of the demurrer as made by the plaintiff and as it applies to the specific answer of this defendant.

When the court had proceeded this far with its opinion the plaintiff filed a motion for leave to amend the petition by interlineation to show endorsement of the note by the Lima First American Trust Company, and the plaintiffs are now in the position of holders of the note, duly transferred by endorsement.

The demurrer is to the second, third and fourth defenses of the answer, which the court will now consider in this order. The gist of the second defense is that the Lima First American Trust Company transferred the note to the Reconstruction Finance Corporation for the sole and only purpose of preventing this defendant from having the right of set-off against the note by reason of his being a depositor; that said bank was insolvent, which was known to the Reconstruction Finance Corporation; this defense avers that the note was transferred as collateral; while it avers that it was done for the purpose of defrauding the makers and endorsers out of the right of set-off, there are no averments of any facts which constitute fraud.

It has been held that a right of set-off against the payee of a promissory note by the maker is not an infirmity in the instrument. *Edge* v. *Stuckey*, 42 Ohio App., 462; 24 Ruling Case Law, 820; 13 Ohio, 495.

There being no well-plead facts in this defense showing fraud it does not state facts sufficient to constitute a defense. It is true that the defense states that the plaintiff took said note without giving any value therefor, but this adds nothing new and is available on the first defense and, therefore, states no new defense. The demurrer to the second defense is, therefore, well taken and should be and is hereby sustained.

The third defense is that the defendant at the time the note was executed, "Signed on the back thereof and that he received no value or consideration for the signing thereof, and that at no time since has he received any consideration or value therefor." It is apparent that Sections 8131, 8134,

8136, 8161 and 8162, General Code of Ohio are sufficient to warrant the court in saying that this defense does not contain a statement of sufficient facts to constitute a defense. The demurrer to this defense should be and is hereby sustained.

The court now comes to the questions involved in the fourth defense. The defendant says:

"That if it should be made to appear that the promissory note set forth in plaintiff's petition was pledged as collateral security for a loan made by the Reconstruction Finance Corporation to the Lima First American Trust Company, that said note was one of many such notes pledged by the Lima First American Trust Company; this defendant further says that the Reconstruction Finance Corporation *holds collateral notes pledged* to it by the Lima First American Trust Company far in excess of the value of the debt owing by the Lima First American Trust Company to the Reconstruction Finance Corporation. * * * That many of the notes so pledged by the Lima First American Trust Company were executed and delivered to the Lima First American Trust Company by makers who had at that time and now have no money on deposit * * * that the Reconstruction Finance Corporation should be compelled first to exhaust its rights and remedies against the makers of collateral pledged to it, which collateral was executed and delivered to the Lima First American Trust Company by makers who then held and now have no deposits therein * * * that unless the Reconstruction Finance Corporation is so compelled to exhaust its remedies against such depositors that his right of set-off will be defeated and a preference will be shown to those makers of collateral and pledged notes who had or now have no deposits in the Lima First American Trust Company."

Does the above defense state facts sufficient to constitute a defense? Primarily this defense seeks a marshaling of the collateral security held by the Reconstruction Finance Corporation as a pledge or security for its loan to The Lima First American Trust Company. In determining the demurrer to this defense the court is of the opinion that three questions arise:

1. What is a set-off;

2. When may a set-off be used;

3. When may a court of equity compel marshaling of collateral securities?

Section 11319, General Code of Ohio defines a set-off as follows:

"A set-off is a cause of action existing in favor of defendant against a plaintiff, between whom a several judgment might be had in the action, and arising on contract or ascertained by the decision of a court. It can be pleaded only in an action founded on contract."

It was held in the case of *Andrews* v. *State, ex rel*, 124 O. S., 348, that:

"A set-off, whether legal or equitable, must relate to cross demands in the same right and when there is a mutuality of obligation."

Equitable set-offs are allowed by our code. The code does not define mutuality of claims, but leaves it to the rules recognized by courts. *Wagner* v. *Stocking*, 22 O. S., 297.

The right of set-off may arise not from statute, but from the equitable rule of mutual credits. *Felton* v. *Bank*, 6 O. N. P., 136.

An examination of the case of *Miles* v. *Olszak*, 87 O. S., 229, discloses that when a savings and loan association becomes insolvent certain set-offs may be allowed, including the liability for the unpaid part of stock subscription by a stockholder and a claim he has for money on deposit. The court says in that case:

"The first reason generally given for the rule denying the right of set-off after corporation has become insolvent, is the *theoretical reason* which often operates to deny the right of set-off in courts of law, which is, that there can be no set-off unless the debts are *mutual* and in the *same right*." See 124 O. S. 348.

If the Lima First American Trust Company was the holder and owner of the note in question at the time that the bank was taken over by the superintendent of banks of the state of Ohio for the purpose of liquidation, then the deposit of the defendant would come within the foregoing rules for the allowance of a set-off. Under the allegations of the defense in this case no such reason exists. If the plaintiff is a bona fide pledgee of the note and was such at the time of liquidation there were no cross demands exist-

ing between the plaintiff and this defendant. There is no mutuality of obligation existing between them and, therefore, there can be no set-off. The foregoing discussion answers the first two questions,—"What is a set-off," and "When may it be used." This defendant had no set-off as to the plaintiff at the time of liquidation, nor could he use the same because the answer of the defense itself alleges that if it should be made to appear that the note was pledged as collateral security that many other notes were so held by the plaintiff at the time the bank went into liquidation. This brings us to the question of marshaling collateral security or liens. The general rule of marshaling liens has been well stated in the case of *Jennings, et al.* v. *Old National Bank, et al.,* 17 C. C., 664, and is as follows:

"The general rule is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only, the former must seek satisfaction out of that fund which the latter cannot touch."

The above case also states that the above general rule must be modified as follows:

"But this rule must be taken with the modification and exception that in its application the paramount encumbrancer shall not be delayed or inconvenienced in the collection of his debt, and that no superior equities of others are interfered with."

It was held in the case of *Fasett* v. *Traber, et al.,* 20 Ohio, 540, as follows:

"When two creditors have such a lien on the same property of their debtor, and the one having the prior lien has also a lien on another fund for the same debt on which the subsequent lienholder has no claim, such prior lienholder will be compelled, in equity, to exhaust such fund before he proceeds to subject the property on which the other creditor has his lien."

The same rule was followed in *Green* v. *Ramage,* 18 Ohio, 428.

The same rule has been stated in *Mason* v. *Hull,* 55 O. S., 256, as follows:

"The rule that a creditor who has a lien on one fund only may compel another creditor having a prior lien thereon and also a lien upon another fund to exhaust the latter

before resorting to the former, is applicable only where both funds are the property of the common debtor. It has no application where the exclusive fund is the property of surety for the debt for which that fund is bound."

The same rule was followed in: *Sternburger* v. *Hanna,* 42 O. S., 305; *Comm. Bank.* v. *Western Reserve Bank,* 11 Ohio 445, 451; *Cary* v. *Folson,* 14 Ohio, 365; *Nelon* v. *Truax,* 6 O. S., 98; *Smith* v. *Atlick,* 24 O. S., 369, *Green* v. *Ramage,* 18 Ohio, 426, 529; *Langel* v. *Moore,* 119 O. S., 299, 26 Ohio Jurisprudence, page 101; Pomeroy's Equity Jurisprudence, Second Edition, Volume 5, page 5078; 38 Corpus Juris, 1365.

In 26 Ohio Jurisprudence, 102, the rule is laid down that two funds must be in the hands of a common debtor, otherwise there can be no marshaling of assets, and is stated as follows:

"If the two funds to which creditors or sets of creditors may resort are not derived from a common source, or are not in the hands of a common debtor, there can ordinarily be no marshaling of assets."

The same rule is followed in: 35 O. S., 256; and 38 Corpus Juris, page 1367.

Does the defendant in this case come within the foregoing rules? It may be said without contradiction that the Reconstruction Finance Corporation has no lien on the funds of The Lima First American Trust Company other than those which have been pledged, and as to all other funds can only be a common creditor in case the pledged securities are insufficient to pay its claims. The defendant, Steer, is simply a common creditor. He has no more right or claim against the pledged securities while they are in the hands of the plaintiff than any other common creditor. That is, assuming that the plaintiff is a bona fide pledgee of the securities. It is true that if these securities are later surrendered by the plaintiff to the liquidator of the bank then the defendant, Steer, would have a set-off. There may be many other creditors who stand in the same position as defendant, Steer, and whose rights would be identical. If this be true there might be enough of them so that, after allowing their set-offs in the manner asked for by this defendant, that the plaintiff would be able

to recover only a small percent of its claim from the sale or collection of its securities. Then the rule that:

"The paramount encumbrancer shall not be delayed or inconvenienced in the collection of his debt, and that no superior equities of others are interferred with,"

would be violated if the court were to allow the relief asked for as against the plaintiff.

It is a general rule of law that "Equity will intervene to prevent a multiplicity of suits." It seems to the court that if the relief asked for in this case were granted that it would violate this rule and create a multiplicity of suits. If the plaintiff is a bona fide pledgee of this note and other notes, it has the superior right to have them or the amount collected on them, either by collection or sale, applied to the payment of its claims. Suppose that all of these securities are sold, plaintiff's claim is paid, and there then remains Two Hundred Thousand Dollars over and above plaintiff's claim which is returned to the liquidator of the bank; could not then this defendant, or any other defendant, maintain a suit against the liquidator of the bank on behalf of himself and all others similarly situated for his proportionate share of such fund? If he could then this rule would not be violated and he would be protected.

Are the funds in this case derived from a common source, or are they in the hands of a common debtor? The bank was the owner of the note; the defendant, Steer, is the debtor; the bank is the debtor of the plaintiff; the plaintiff is the owner of the note to the extent of its lien; the bank is the debtor of the defendant, Steer, and such debt is a set-off against any claim of the bank against Steer at the time the bank went into liquidation, provided such claim comes within the rule and provisions in which set-offs may be allowed. As the court has already indicated defendant, Steer, has no set-off against the note in the hands of the plaintiff as a bona-fide pledgee. He would have a set-off if the note had been held by the bank at the time it went into liquidation. He may have a set-off to the extent that there is any surplus returned to the liquidator after the payment of the claim for which the securities are pledged, under certain specific conditions.

In 26 Ohio Jurisprudence, 105, the author states:

"An unsecured creditor cannot assert the equity to marshal assets. Apart from the debtor, only he who has secured a lien on a part of the assets, or a right in the nature of a lien, can exact the court's protection by marshaling."

The above rule is supported in 18 Ruling Case Law, page 548, Section 6. The claim of defendant, Steer, is merely that of a common creditor. He has no claim which partakes of the nature of a lien. Even if the bank held the note at the time it went into liquidation he would have no lien but would merely have the right of set-off. If the above rule is the correct rule then he would have no right to the remedy of marshaling assets.

The allegations of the answer are to the effect that the bank is insolvent and that it is in the process of liquidation. If the answer were that the bank was solvent and had an ample amount of property to pay both the claim of plaintiff and defendant a different rule might apply.

The court finds that the great weight of authority sustains the position that a pledgee of commercial paper cannot be compelled to resort first to the other collateral in order to save equitable rights of the maker of a note against a pledgor. This rule is supported by the Supreme Court of the United States in the case of *Sowell* v. *Federal Reserve Bank*, 268 U. S., 449.

The court's attention has also been called to the case of *Bulkley* v. *Green*, 98 O. S., 55, in which the Supreme Court of Ohio has laid down the rule that:

"A counter-claim cannot be made available under Section 11635, General Code, as a basis to vacate a judgment by confession. Such is not a defense to the action within the purview of that section."

Section 11637, General Code, provides what must precede a vacation of a judgment.

While the rule laid down in the above case applies to Section 11635, General Code, which is applicable to cases to vacate or modify judgments after the term it, no doubt, likewise applies to Section 11637, General Code. This judgment was vacated during the term and the code nowhere

limits the authority of the court in this respect. It is an inherent power in the courts to open up judgments during term, subject to the statutory restrictions of Section 11637, General Code, that a valid defense must first be adjudged. In this case the defendant made a motion to vacate judgment, supported by an affidavit that he had a valid defense against the note sued upon, and also that he had a set-off. If he has no valid defense he had no right to have the judgment vacated. If he has a valid defense he had a right to have it vacated and set up his defense. The court also, in my opinion, had the inherent right to permit him, in addition to setting up a defense, to set up a set-off. However, he could not, as a subterfuge, claim a valid defense for the purpose merely of setting up a set-off. In order to prevent a multiplicity of suits, however, a court of equity certainly would have the right to proceed if it deemed it best, notwithstanding the provisions of the statute. Who could be wronged by such procedure if the court found a valid set-off? When the proceedings are by petition after term there could be no justification for filing a petition claiming a defense merely for the purpose of claiming set-off. In the case at bar, as the original petition stood, the defendant would be justified in assuming that he might have a valid defense because a copy of the note attached to the petition contained no endorsement of the payee. The mere fact that this has now been cleared up by amendment does not change the right which existed under the state of pleadings at that time.

After careful consideration of all the authorities and the pleadings in this case, the court has arrived at the conclusion that the fourth defense does not state facts sufficient to constitute a defense and that the defendant, having no lien and being merely a general creditor of the bank, cannot resort to equity to marshal pledged securities to determine whether or not he may have a right of set-off which would have existed against the pledgor had his note not been pledged. The two funds are not derived from a common source and are not in the hands of a common debtor; therefore, there can be no marshaling of assets. The demurrer to the fourth cause of action should be and the same is hereby sustained.