HOMAN, ASSIGNEE, APPELLEE, *v.* MICHLES ET AL., APPELLEES; SANDUSKY STEEL & SUPPLY CO. ET AL., APPELLANTS.

(No. 550—Decided April 29, 1963.)

*Messrs. Smith & Lehrer*, for appellants.
*Mr. Charles S. Fox*, for appellee Beatrice S. Michles.

Fess, J. This is an appeal on questions of law and fact by appellants Sandusky Steel & Supply Company and Sandusky Steel & Iron Company from an order and judgment made in a proceeding to marshal assets entered in favor of Beatrice Michles and adverse to appellants.

On September 18, 1957, Marcus and Beatrice Michles, then husband and wife but since divorced, executed their joint and several note to the Croghan Colonial Bank in the sum of $15,000 secured by mortgage on a parcel of land herein referred to as Parcel No. 2 owned by Marcus, and also on another parcel herein referred to as Parcel No. 3 owned one-half by Marcus and one-half by Beatrice.

We find, as did the trial court, that Beatrice signed this note as accommodation maker and in this proceeding has the status of surety for her husband's obligation. On November 10, 1961, this note was assigned by the Croghan Bank to the Sandusky Steel & Supply Company. The note has a balance due as of January 1, 1962, in the sum of $12,204.97. Unpaid taxes as well as rents are also involved in the proceeding, but are immaterial so far as the decision herein is concerned.

Lower in priority and junior to the Croghan Bank note and mortgage is also a note in the face amount of $35,000, the effective date of which is April 18, 1960, held by Sandusky Steel & Supply Company and Sandusky Steel & Iron Company secured by mortgage on Parcel No. 2 owned by Marcus and also secured by Marcus' undivided half interest in Parcel No. 3. Beatrice did not join in this note and mortgage nor did she release dower.

Sandusky Steel contends that the entire proceeds from the sale of Parcel 3, including the one-half interest of Beatrice, should first be applied toward the satisfaction of the Croghan Bank mortgage which it holds as assignee, thus freeing the entire proceeds of the sale of Parcel No. 2 toward the payment of its second mortgage note.

Beatrice claims that as surety the proceeds of the sale of Parcel No. 2 and one-half of Marcus' interest in Parcel No. 3 should first be applied in satisfaction of the Croghan Bank note, thus leaving her one-half of the proceeds of the sale and income from Parcel No. 3 free from her husband's creditors, including appellant's claim secured by second mortgage.

With regard to the contention of Sandusky Steel, the doc-

trine of marshaling is a familiar one in equity, growing out of the equitable principle that a party having two funds to satisfy his demands shall not, by his election, disappoint a party who has only one of the funds upon which to rely, thus preventing him from exercising his right of recourse against the property or assets in question in an unreasonable manner or so as to satisfy his claim to the exclusion of such other claimants. 35 Ohio Jurisprudence (2d), 592. Thus if a senior creditor has a lien on two different parcels of land, and a junior creditor has a lien on only one of such parcels and the prior creditor elects to take his whole demand out of the parcel of land on which they both have liens, the junior creditor is entitled either to have the senior creditor thrown upon the other fund or to have the prior lien assigned to him for his benefit. If, to prevent delay to the paramount creditor having the lien on all, he is allowed to take the proceeds of the sale of the tract on which both have liens, the other will be subrogated to the lien of the first, to that extent, against the other tracts. And if A has a paramount lien on two tracts of land, B a lien on one of them, and C a subsequent lien on both, and A exhausts the tract which is the subject of B's lien, B will be subrogated to A's lien on the other tract, although C is thereby excluded from the fund. 35 Ohio Jurisprudence (2d), 597-598.

But, as stated by the trial court in his opinion, there is an important exception to the application of the doctrine. In order that the doctrine may be applicable, the rule is that the parties must be creditors of the same debtor, and there can ordinarily be no marshaling of assets if the two funds to which creditors may resort are not derived from a common source or are not in the hands of a common debtor. *Mason* v. *Hull, Assignee*, 55 Ohio St., 256; *Parker* v. *Wheeler*, 47 Ohio App., 301; 35 Ohio Jurisprudence (2d), 600; 135 A. L. R., 738, annotation at pages 739, 741; 35 American Jurisprudence, 387; 55 Corpus Juris Secundum, 966, 967.

There is also another reason why the doctrine should not apply to the circumstances presented in the instant case. The power to compel a party who has two funds to resort to the one on which others have no claim will only be exercised when it will work no injustice to any party connected with the litigation. As the principle of marshaling originated in courts of

equity for the very purpose of preventing injustice to a junior lienholder, a court of equity will not interfere when such interference would work injustice either to the common debtor or to other persons under circumstances where it would be inequitable to apply the principle. *Green* v. *Ramage*, 18 Ohio, 428; *Langel* v. *Moore*, 119 Ohio St., 299 (deprivation of rights of general creditors); 35 Ohio Jurisprudence (2d), 602-603. Thus it is held that the doctrine will not be applied to the prejudice of a claim of homestead. *Kilgore* v. *Miller*, 19 C. C., 93, 10 C. D., 464; *Bernsee* v. *Hamilton*, 6 C. C., 487, 3 C. D., 550; 35 Ohio Jurisprudence (2d), 604.

Cases throughout the United States seem to be in full accord that a junior creditor of a common debtor cannot, under the guise of the doctrine of marshaling assets, require a senior creditor, who is additionally secured by the common debtor's surety, to resort first to the surety's property before having recourse to the property of the principal debtor. Annotation in 135 A. L. R., 738, citing, *inter alia*, *Mason* v. *Hull, Assignee* (1896), 55 Ohio St., 256. The surety has a prevailing equity, enforceable by way of subrogation to the position of the paramount creditor, and the doctrine of marshaling assets shall not be thus applied to the prejudice of the surety and his property taken before resort is made to the assets of the debtor primarily liable. Annotation, 135 A. L. R., 740, also citing *Mason* v. *Hull, supra.*

In *Mason* v. *Hull, supra*, C was surety for M on the debt, the collection of which was sought by the levy of the execution on lands of the former. The court held that it was C's equitable right to have the principal's property applied to the satisfaction of the debt to the exoneration of his own; or, if he should be compelled to pay it, he would be entitled to be subrogated, to the rights of the creditor, and enforce the judgment lien against the property of the principal, and to all the benefits of that lien, which, being superior to S's mortgages, would at last appropriate the fund in question in preference to the mortgages.

*Mason* v. *Hull* was decided prior to the enactment of the Uniform Negotiable Instruments Act but we do not regard it overruled by the provisions of that act in so far as it announced a fundamental equitable principle in a proceeding to marshal assets. We recognize that Beatrice, as an accommoda-

tion maker on the Croghan Bank note, cannot prevent a joint judgment from being taken against her on such note, but, nevertheless, in a proceeding to marshal assets her equitable interest as surety can be established and her equity protected.

*Richards* v. *Market Exchange Bank* (1910), 81 Ohio St., 348, involved a judgment on a cognovit note upon which Richards contended that he was a surety. In the course of its opinion the court referred to Section 5419, Revised Statutes (Section 2329.54, Revised Code), providing how judgment against principal and surety might be entered, and for execution in such cases, Section 5832, Revised Statutes (Section 1341.03, Revised Code), providing that sureties on bank paper who were known to be such at the time the contract was made might prove that fact, notwithstanding it might contradict the face of the instrument, and Section 5836, Revised Statutes (Section 1341.07, Revised Code), providing that a surety in a judgment who has paid it may be subrogated to the rights of the judgment creditor and might revive the judgment if it had become dormant. The court remarked that it failed to perceive any necessary conflict between such section and the N. I. L. in the particulars there involved, thus recognizing that, notwithstanding the provisions of the newly enacted N. I. L., the former provisions dealing with the rights of sureties were still in effect. With regard to the N. I. L., the court also remarked that it did not purport to embody all the law relating to sureties; "indeed the word 'surety' does not appear in the text of the act at all, but such parties whose names appear on the face of the instrument are sufficiently described by the classification of those 'primarily liable.'" It is, therefore, concluded that the provisions of the N. I. L. do not prevent the application of equitable principles in a proceeding to marshal assets and liens.

It is to be noted that Section 1341.03, Revised Code, provides:

"In contracts for the payment of money to banks or bankers, sureties in fact, known to the parties to be such at the time such contracts were made, may be proved, and shall be considered in all courts, to be sureties, and have all the privileges of sureties, anything in the contract expressed to the contrary notwithstanding."

The *Richards case* long ago held that this section is not

in conflict with the Negotiable Instruments Act and *Richards* has not been modified or overruled.

At law the surety will be compelled to pay the debt, and after that may look to the collaterals of his principal for indemnity, but in equity, which does more exact justice under the circumstances of a given case, if there be circumstances from which it appears directly or by reasonable inference that substantial injury or prejudice will not result to the creditor by the enforcement, in the first instance, of the surety's right to have the debt paid from his principal's property, the surety may, in case of hardship to himself, compel the creditor to resort to securities in the creditor's hands or under his control, the property of the principal, in satisfaction of the debt, before coming to the surety. Annotation 37 A. L. R., 1262, 1263, citing *Glaser* v. *Hellsman* (1876), 1 W. L. B., 140, 7 Dec. Rep., 134.

Applying the foregoing equitable principles, we find and determine that Sandusky Steel should be paid the full amount of the proceeds of the sale of Parcel No. 2 and of Marcus' undivided one-half interest in Parcel No. 3 in satisfaction of the Croghan Bank note and mortgage, and that any balance due thereon unsatisfied shall be paid from that portion of the proceeds of the sale of Beatrice's undivided one-half interest in Parcel No. 3, and that the balance remaining be paid to Beatrice Michles.

Judgment in favor of Beatrice Michles and against defendants-appellants Sandusky Steel & Supply Company and Sandusky Steel & Iron Company and cause remanded to the Common Pleas Court for further proceedings in accordance with this opinion.

*Judgment accordingly.*

DEEDS and SMITH, JJ., concur.