**In re the GIBSON GROUP, INC., Debtor.**

**Bankruptcy No. 1–90–00280.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 25, 1993.

David O. Simon, Cleveland, OH, Winslow W. Johnson, Cincinnati, OH, for UCC.

Philomena S. Ashdown, Cincinnati, OH, for debtor.

Jeffrey Marks, Cincinnati, OH, for CP Forest.

Richard Boydston, Cincinnati, OH, for Chase Bank.

## DECISION ON OBJECTION OF UCC TO SECTION 3.4 OF PLAN

BURTON PERLMAN, Chief Judge.

Second Amended Plan (the "plan") in this case has been confirmed. The plan includes a provision, Section 3.4, which deals with the order of payment of certain monies to creditor Chase Bank. Prior to confirmation, the Unsecured Creditors' Committee ("UCC") had objected to that provision. The plan itself provided that the question reserved by the UCC could be decided after confirmation. A hearing on the objection by the UCC was subsequently held. That objection goes to the order of payment to Chase Bank. Resolution of that objection is what is now before us.

The plan at Section 3.4 provides that Chase Bank of Ohio and Dunfries Corporation (collectively "Chase Bank") are to receive payment for secured claims first from the proceeds of the sale of certain stock by debtors, and then from the debtor's accounts receivable. Canadian Pacific Forest Products Limited ("CP Forest"), which holds a junior secured interest in the accounts receivable, is to receive the proceeds from the remaining accounts receivable. The UCC objects to this order of payment and contends that Chase Bank should first be required to pursue the accounts receivable, and only then the stock sale proceeds. Because CP Forest has no security interest in the stock sale proceeds, the UCC thus might procure a benefit for its constituency.

The UCC bases its objection to Section 3.4 of the plan on the equitable doctrine of marshaling. In *Meyer v. United States,* the United States Supreme Court explained that the doctrine "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963) (citing *Sowell v. Federal Reserve Bank,* 268 U.S. 449, 456–57, 45 S.Ct. 528, 530, 69 L.Ed. 1041 (1925)). As it is an equitable doctrine, marshaling encourages fair and just treatment of junior lienors. *Meyer,* 375 U.S. at 236, 84 S.Ct. at 320.

■ In deciding whether to apply the doctrine of marshaling assets, state law establishes the guidelines. *In re Madeline Marie Nursing Homes,* 694 F.2d 433, 438–39 (6th Cir.1982).

This Court has previously restated Ohio law on marshaling in *Matter of Willson Dairy Co.,* 30 B.R. 67 (Bankr.S.D.Ohio 1983), as follows:

... [T]he doctrine of marshaling is a familiar one in equity, growing out of the equitable principle that a party having two funds to satisfy his demands shall not, by his election, disappoint a party who has only one of the funds upon which to rely, thus preventing him from exercising his right of recourse against the property or assets in question in an unreasonable manner or so as to satisfy his claim to the exclusion of such other claimants ...

In order that the doctrine may be applicable, the rule is that the parties must be creditors of the same debtor, and there can ordinarily be no marshaling of assets if the two funds to which creditors may resort are not derived from a common source or are not in the hands of a common debtor ...

The power to compel a party who has two funds to resort to the one on which others have no claim will only be exercised when it will work no injustice to any party connected with the litigation. (Citations omitted.)

*Id.* at 71 (quoting *Homan v. Michles,* 118 Ohio App. 289, 194 N.E.2d 162, 164 (Ohio Ct.App.1963).

■ In determining whether the UCC should benefit from the doctrine of marshaling, a threshold issue that must be addressed is whether an unsecured creditor has standing to request marshaling of the debtor's assets. Ohio follows the majority

rule which denies unsecured creditors standing to invoke the doctrine of marshaling. Although the general principles behind the doctrine of marshaling are based on treating junior creditors fairly, the junior creditors must usually be secured creditors. *Reconstruction Finance Corp. v. Howell Motor Car Co.*, 31 Ohio N.P. (n.s.) 409, 416–17 (1934). The *Reconstruction Finance* court simply stated that "[a]n unsecured creditor cannot assert the equity to marshal assets. Apart from the debtor, only he who has secured a lien on a part of the assets, or a right in the nature of a lien, can exact the court's protection by marshaling." *Id.* at 417. A more recent Ohio case, *Allstate Financial Corp. v. Westfield Service Management Co.*, 62 Ohio App.3d 657, 577 N.E.2d 383, 390 (1989), reaffirmed the *Reconstruction Finance* court's holding denying unsecured creditors standing to invoke the doctrine. The *Allstate* court refused to allow a creditor with an invalid lien to request that the court marshal the debtor's assets. *Id.* Furthermore, most courts outside of Ohio also follow the policy that an unsecured creditor may not request marshaling. *In re Vermont Toy Works, Inc.*, 135 B.R. 762, 768 (D.Vt.1991); *In re Craner*, 110 B.R. 111, 123 (Bankr.N.D.N.Y.1988) (denying unsecured creditor right to request IRS marshal assets); *In re Mesa Intercontinental, Inc.*, 79 B.R. 669, 672 (Bankr. S.D.Tex.1987).

 But even if the UCC had standing to raise the question of marshaling, it could not succeed on its objection. While it is true that the usual indicia looked for to apply marshaling are found here, first, competing creditors of the same debtor, second, two funds belonging to the same debtor, and, third, rights of one creditor in both funds, while the other claims only against one, these are not sufficient to compel a conclusion in favor of the UCC. This is so because the final test prescribed in the *Homan* case, *supra*, has not been met. Prejudice to CP Forest will result if the UCC has its way. It is not appropriate for a party, asserting a valid security interest to be defeated in its expectations by a creditor, or creditors, having no such interest.

 Prejudice to a junior secured creditor led the court in *In re Dig it, Inc.*, 129 B.R. 65, 67 (Bankr.S.C.1991), to deny a trustee's request for marshaling. The junior secured creditor might have been unable to collect if marshaling was approved. The *Dig It* court explained that it was inappropriate to use the equitable doctrine to defeat superior equity and priority. *Id.* at 67. Thus, the marshaling doctrine only applies if the rights of the secured creditors are not prejudiced. *See In re McElwaney*, 40 B.R. 66, 72 (Bankr.M.D.Ga.1984) (trustee unable to invoke marshaling absent hidden liens and unsecured creditors may not benefit over junior secured creditor).

In light of the foregoing discussion, this court is compelled to conclude that the objection of the Unsecured Creditors' Committee to Section 3.4 of the plan must be overruled.