In re Stephen H. KERR, Debtor.

Showe Management Corp., Plaintiff,

v.

Stephen H. Kerr, Defendant.

Bankruptcy No. 05–11872.
Adversary No. 06–01298.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 7, 2008.

Christopher M. Corrigan, Glowacki & Associates Co LPA, Cleveland, OH, for Plaintiff.

Kenneth J. Freeman, Paul S. Kuzmickas, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Plaintiff, Showe Management Corporation (Showe Management), a judgment creditor, seeks to have a state court judgment it obtained against the Debtor–Defendant, Steven H. Kerr (Debtor), determined nondischargeable. Such relief is sought pursuant to § 523(a)(6) of the Bankruptcy Code. *11 U.S.C. 523(a)(6)*.

Core jurisdiction is found in this proceeding under 28 U.S.C. §§ 1334, 157 and General Order No. 84 of the District. Following the completion of a duly noticed trial proceeding, an examination of the evidence admitted, and the record, generally, the following factual findings and conclusions of law are hereby submitted:

\*

The Debtor, Steven H. Kerr, initially filed his voluntary petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. Subsequently, his case was converted to liquidation proceedings under Chapter 7. Thereupon, Showe Management filed the above-styled adversary proceeding to prevent the Debtor from obtaining a discharge of its judgment debt. Prepetition, between the dates of May 15, 1999 and September 11, 2004, the Debtor leased apartment number 422 at Lake Shore Tower Apartments in Lakewood, Ohio from Showe Management. On or about August 11, 2004, Showe Management caused Debtor's eviction from said premises and Debtor vacated the premises by September 11, 2004. (See, Plaintiff's Exhibit 8). The Lakewood Municipal Court issued its judgment in Plaintiff's favor and against the Debtor in the amount of $13,990.55. It is this judgment award which Showe Management seeks to obtain a nondischargeability ruling.

\* \*

Showe Management contends that the Debtor intentionally damaged its property, i.e. Apartment # 422, upon his eviction from the premises. It further asserts that the Debtor wrongfully removed certain fixtures from the apartment in violation of the applicable lease agreement.

The Debtor denies, generally, the Complaint allegations and asserts that any property removed from the subject premises were paid for personally and were

removed with Showe Management's approval.

* * *

The dispositive issue before this Court is whether the Debtor's conduct in this matter evinces the required intention to warrant a denial of debt discharge.

* * * *

■ Section 523(a)(6) of the Bankruptcy Code provides in pertinent part: § 523.

Exceptions to discharge.

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

*11 U.S.C. 523(a)(6).*

* * * * *

■ Pursuant to Federal Rule of Bankruptcy Procedure 4007, the subject dischargeability action was duly filed. In such proceedings, the complainant bears the burden of proof which must be carried by a preponderance of the evidence standard. See, *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is well established that, for nondischargeability to apply under § 523(a)(6), the resulting harm must have been intended, subjectively, by the debtor's conduct, as opposed to negligence or recklessness. See, *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *accord, In re Markowitz,* 190 F.3d 455 (6th Cir.1999).

In support of its Complaint allegations, Showe Management offered testimony by Patrick Hunter (Hunter), its electrician, and by Maric Ball (Ball), its community manager at Lake Shore Towers. Both individuals are employees of Personnel Resource Management who are assigned to Lake Shore Towers. Hunter has worked with Showe Management for more than 25 years and maintains all electrical matters for Showe Management. He had specific familiarity with apartment 422. He observed the following on September 15, 2004 when he was sent to check apartment 422, after the Debtor vacated the premises: cut electrical wiring, concealed electrical junction boxes with cut wiring and foam insulation sprayed inside. He identified numerous photos of 422 (Plaintiff's Exhibit 5) demonstrated by the Plaintiff Showe Management, either taken by himself or taken by some other person while he was present. Other photos revealed removed electrical switches, plastered over junction boxes, converted hallway lighting, exposed wiring with spliced wire, missing doors throughout the apartment, missing kitchen cabinet facings (front panels), drawers, drawer sliders, and missing light fixtures.

Totally, he entered apartment 422 at the management's request at least four to eight times between September 15, 2004 and October 1, 2004, following Debtor's eviction. He was unaware of who covered the junction boxes, removed the light fixtures, cut or installed the improper wiring within apartment 422 or in the adjacent common hallway. His testimony was credible, and substantially corroborated by the testimony of Maric Ball.

The testimony of Showe Management's community manager, Maric Ball, was supportive of Patrick's Hunter's testimony. She testified that management first gained access to unit 422 following Debtor's eviction on or about September 10, 2004. She entered 422 on that date, accompanied by a bailiff of the Lakewood Municipal Court, for a walk-through of the apartment. Thereupon, she observed a missing door chime, stove, dishwasher, refrigerator, kitchen cabinet doors, shelving, drawers, microwave oven, missing drawer knobs,

missing doors and door hardware, missing closet rod, missing light fixtures throughout, missing window screens, missing T.V. wall bracket (leaving a damaged wall), missing sliding door on shower, missing sink hardware, missing shower rod, missing plate covers for electrical outlets. (Ball, Direct and Cross–Examination)

Ms. Ball further testified that prior to the date that the Debtor vacated 422, only he had access to his apartment as he had changed the entry lock. No management personnel had a key to his apartment. Nor did the management master key provide access to 422.

The Debtor took occupancy in apartment 422 on May 15, 1999. During his tenancy Showe Management commenced three eviction proceedings against him. The last such proceeding resulted in his being evicted in September of 2004. It is unrefuted that during the same time period Debtor filed legal actions against Showe Management and certain of its agents.

Prior to occupying apartment 422, Debtor executed a lease agreement (Plaintiff's Exhibit 7; Plaintiff's Exhibit 2 to Debtor's Deposition) with Showe Management, which he acknowledged bears his signature. Therein, the following provisions are pertinent to the Court's resolution of this matter:

2(k) That he will use and operate all electrical and plumbing fixtures properly.

2(m) That he will personally refrain, and forbid another person ... from intentionally or negligently destroying, defacing, damaging, or removing any fixture, appliance, or other part of the premises.

2(p) That he will not make any alterations, additions or improvements of any sort, without the landlord's written consent.

2(q) That he will at the termination hereof and prior to surrender of possession, have the premises thoroughly cleaned, and in the event of failure so to clean, he will pay landlord the cost of having same done.

2(r) That upon termination hereof and surrender all keys to door locks and in the event of failure to do so, pay landlord the cost of replacing same.

2(s) That he will not ... in any manner deface or injure the walls, windows, cabinets, or woodwork....

2(t) That he has inspected said premises upon commencement of lease, and found same to be decent, safe and sanitary. That he is responsible for amount of inventory and damages to furniture, carpeting and appliances ... and agrees to the schedule of charges thereon should he fail to return the premises in a decent, safe and sanitary manner, ordinary wear and tear excepted.

(Plaintiff's Exhibit 7, p. 2; Plaintiff's Exhibit 2 to Debtor's Deposition)

Said lease agreement includes a merger provision which states:

This lease contains the final and entire agreement between the parties hereto and no party to this lease shall be bound by any term, condition, or representation, oral or written, not set forth herein.

(Plaintiff's Exhibit 7, p. 4; Plaintiff's Exhibit 2 to Debtor's Deposition, p. 8)

Notwithstanding the aforementioned lease terms and the Debtor's signature thereon, Debtor testified that he read the lease prior to signing and that unit 422 was dilapidated and was unlivable when he took occupancy on May 15, 1999. He further testified that 422 was "gutted" when he took occupancy and he expended some $200,000.00 of his own funds to remodel and upgrade the unit. (Debtor, Direct)

The evidence further shows that a management inspection of 422, immediately following Debtor's departure, revealed cut electrical wiring throughout the unit, kitchen cabinet door removals, kitchen drawer removals, light fixture removals throughout the unit and in the adjacent common hallway, missing doors, and removal of appliances. The Debtor acknowledged changing the entry door lock to 422, along with substantial remodeling to 422, generally. The Debtor further acknowledged that he possessed no written authorization from management addressing these alterations or improvements.

Upon vacating the premises following his eviction, it is unrefuted that Debtor only surrendered the entry key to 422, but failed to surrender the main entrance key to Lake Shore Towers, his mailbox key, and garage key. Further, Plaintiff's Exhibit 5 clearly depicts a vacated unit 422 in an unclean manner (i.e. trash or other floor debris, torn carpet, cut wiring, etc.)

All of the above-noted deficiencies are in violation of specific lease terms which the Debtor agreed to adhere to when he signed the lease. Notwithstanding his several protestations that he made certain improvements or alterations with prior approval of management, he was unable to support his contentions with any written documentation as required by his signed lease.

Debtor's original lease contained specific restrictions regarding alterations. (See, Plaintiff's Exhibit 12 to Debtor's Deposition):

**12. Restrictions On Alterations:**

The Tenant agrees not to do any of the following without first obtaining the Landlord's written permission:

a. change or remove any part of the appliances, fixtures or equipment in the apartment;

b. paint or install wallpaper or contact paper in the unit;

c. attach awnings or window guards in the unit;

d. attach or place any fixtures, signs or fences on the building(s), the common areas, or the common grounds;

e. attach any shelves, screen doors, or other permanent improvements in the unit;

f. install washing machines, dryers, fans, heaters, freezers or air conditioners in the unit;

g. place any aerials, antennas, citizen band radios or other electrical connections on the unit; or

h. install any waterbeds in the unit.

Although management commended Debtor early-on for the care given to unit 422 (Plaintiff's Exhibit 14), the same commendation letter admonished him about making alterations to his apartment without prior written approval of management. In view of these lease provisions, and without written evidence to the contrary, the Debtor cannot argue persuasively that he remodeled unit 422 with prior written permission of management.

Debtor's belief that he could remove fixtures from unit 422, upon the pretext that he paid for them is misplaced. Firstly, the Debtor is a well-educated (N.Y.U and Harvard) and astute business person. Retired after some thirty years in the transportation industry, he owns or formerly owed a Park Avenue Apartment in New York City in addition to other personal real estate. He also has served as owner and chief executive officer of six (6) companies, including a construction company. Secondly, he produced no documentation to show prior management approval authorizing him to remove any fixtures.

Ohio law is quite specific regarding the definition and characterization of fixtures.

Ohio Revised Code § 5701.02 provides the following definition of "fixture".

§ 5701.02. Definitions relating to real property

(C) "Fixture" means an item of tangible personal property that has become permanently attached or affixed to the land or to a building, structure, or improvement, and that primarily benefits the realty and not the business, if any, conducted by the occupant on the premises.

Ohio Rev.Code § 5701.02(C) (2008).

■ Under Ohio law, the determination of when personal property becomes a fixture depends on the following three factors:

(1) Actual annexation to the realty, or something appurtenant[1] thereto;

(2) Appropriation to the use or purpose of that part of the realty with which it is connected;

(3) The intention of the party making the annexation, to make the article a permanent accession to the freehold— this intention being inferred from the nature of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

*In re Cluxton,* 327 B.R. 612, 615(6th Cir. BAP 2005) *quoting Teaff v. Hewitt,* 1 Ohio St. 511, 530 (1853) (emphasis in original); *see also Zangerle v. Standard Oil Co.,* 144 Ohio St. 506, 514, 60 N.E.2d 52, 56 (1945).

■ Courts must consider the particular facts of the case to determine whether the subject property is personal property or satisfies the definition of a fixture because the item is "so connected with the realty that a disinterested observer would consider it a part thereof." *Jones v. Ohio Building Co. et al.,* 4 Ohio Misc.2d 10, 447 N.E.2d 776 (1982); *see also Masheter v. Boehm,* 37 Ohio St.2d 68, 73–75, 307 N.E.2d 533 (1974). While there must be annexation to the realty to make personal property a fixture, the annexation may be slight. *In re Cluxton,* 327 B.R. at 615 (a mobile home attached to the land via electrical and plumbing); *Holland Furnace Co. v. Trumbull Savings & Loan Co.,* 135 Ohio St. 48, 53, 19 N.E.2d 273 (1939)(a furnace attached only by sections of pipe to a house was a fixture passing with the house upon foreclosure of the mortgage). Where an item is attached with an appropriate use associated with its installation, it becomes "an integral and necessary part of the whole premises and ordinarily it would not be taken out or dismantled until it was worn out by use". *Id.* Additionally, the intention to make personal property a permanent fixture can be inferred from whether the item is "capable of severance without material harm to the realty" to which it is attached. *See* Official Comment to Ohio Rev.Code § 1302.01 (2008).

Herein, the Debtor does not dispute that he removed the following items from apartment 422: kitchen cabinets, drawers, slides, range, refrigerator, dishwasher, light fixtures, doors and shower rods. He contends that he removed these items because they were his personal property. Considering the above fixture analysis, however, a different conclusion is more plausible. First, kitchen cabinets, drawers, slides, shower rods and light fixtures are attached to the real property or something attached to the real property with hardware; while a range, refrigerator, and dishwasher are clearly appurtenant to the

---

1. An appurtenance is something that belongs to or is attached to a more important thing. *Black's Law Dictionary* 111 (8th ed.2004). An item is appurtenant to something else when it is necessarily connected with the use and enjoyment of the latter. *Black's Law Dictionary* 94 (5th ed.1979).

kitchen area of apartment 422. (See, Plaintiff's Exhibit 5–D; Maric Ball, Direct) There are spaces carved out for the placement of these appliances in the kitchen area of apartment 422. *Id.* All two bedroom units in Lake Shore Towers are equipped with a dishwasher, stove, and refrigerator. *Id.;* Plaintiff's Exhibit 5–E. Showe Management purchases all such appliances for its units, including apartment 422. (Maric Ball, Direct) Second, the Debtor testified that the sole purpose of attaching all of these items to the real property was to renovate the apartment. Third, based on the nature of the items attached and the manner of attaching these items to the apartment, the Debtor, who attached these items to apartment 422, demonstrated his intention for them to become a permanent part of the real property because they were not "capable of severance without material harm to the realty" as evidenced by the resulting harm depicted in Plaintiff's exhibits. Therefore, the three prongs determining the attached personal property to be permanent fixtures in apartment 422 are met.

The Debtor testified that he removed the appliances from apartment 422 when he moved out. Incredibly, he testified that he was not aware that items he installed and removed were fixtures, but also stated he had nothing in writing authorizing him to remove fixtures. Notwithstanding, the very nature, manner of location within the cabinet structure of 422's kitchen area, and the intended use of same, clearly enable these appliances to become characterized as fixtures within the subject apartment. Additionally, Debtor's removal of same, without prior written authorization violated the terms of his lease. Such negates any authorized intent for such removal. This same finding and conclusion applies to his acknowledged removal of cabinet drawers, shelving, room doors, lighting fixtures, door chime and other fixtures.

* * * * * *

Accordingly, the Debtor's subject conduct was both willful and malicious as proscribed by § 523(a)(6) of the Bankruptcy Code. Judgment is hereby rendered in favor of the Plaintiff, Showe Management, with the state court judgment amount of $13,990.55 being adjudged nondischargeable [2]. Costs are awarded to the Plaintiff.

**IT IS SO ORDERED.**

### *JUDGMENT*

At Cleveland, in said District, on this 7th day of March, 2008.

A Memorandum of Opinion and Order having been rendered by the Court in this matter, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Debtor's subject conduct was both willful and malicious as proscribed by § 523(a)(6) of the Bankruptcy Code. Judgment is hereby rendered in favor of the Plaintiff, Showe Management, with the state court judgment amount of $13,990.55 being adjudged nondischargeable. Costs are awarded to the Plaintiff.

**IT IS SO ORDERED.**

---

**2.** Certification of Plaintiff's costs were received and considered.