In re **MARBLE CLIFF CROSSING APARTMENTS, LLC, Debtor.**

**MTGLQ Investors, LP, Plaintiff,**

v.

**Bresco Solutions, LLC, et al., Defendants.**

Bankruptcy No. 11–61545.
Adversary No. 12–2362.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Dec. 28, 2012.

Michael J. O'Grady, Frost Brown Todd LLC, Cincinnati, OH, for Plaintiff.

Joseph C. Pickens, Taft Stettinius & Hollister LLP, Columbus, OH, for Defendants.

***MEMORANDUM OPINION AND OR-DER FOR COMPLAINT TO DE-TERMINE VALIDITY, PRIORITY, AND EXTENT OF LIENS AND OB-JECTION TO CLAIMS OF BRESCO SOLUTIONS, LLC (DOC. NO. 1)***

CHARLES M. CALDWELL, Bankruptcy Judge.

This Adversary Proceeding arises from the Chapter 11 case of Marble Cliff Crossing Apartments, LLC ("Debtor"). MTGLQ Investors, LP ("Plaintiff") commenced this action to determine whether the claims of Bresco Solutions, LLC ("Bresco") are secured. Bresco assigned the claims to The Security Network, Inc. ("Defendant"). This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference for this District. This is a core proceeding. The following constitutes the Court's findings of facts and conclusions of law.

Plaintiff seeks a determination of the validity and priority of two security interests obtained by Bresco in 2010 and 2011, and based upon this determination, objects to the secured status of the claims now

held by Defendant. In sum, the complaint includes four arguments. First, Plaintiff asserts that Bresco did not obtain a security interest in 2011 because it did not have a valid security agreement with the Debtor. Second, Plaintiff claims that Bresco's security interests are unperfected because the various pieces of collateral are fixtures. Third, Plaintiff contends that its security interest in the collateral takes priority over Defendant's security interests, rendering those interests unsecured due to a lack of equity. Fourth, Plaintiff argues that several matters not related to the validity or priority of the security interests, require this Court to deem the claims unsecured.

The Debtor owns an upscale 276–unit apartment complex located in Franklin County, Ohio. In 2010, Bresco sold and installed security cameras and related hardware at the complex. In 2011, Bresco sold and installed wireless internet access equipment at the complex, including a rack, controller, wireless access points, and related wiring and hardware. As part of each transaction, Bresco filed UCC financing statements with the Ohio Secretary of State's office, but not with the Franklin County Recorder's office.

At trial, the Court heard testimony from the following witnesses: Mr. Brent Beatty, the 50% owner and managing member of Bresco; Mr. Christopher Deibel, the president of Scioto Management Group, the company which manages the apartment complex on behalf of the Debtor; and Mr. Thomas Alexander, the sole owner of the Defendant.

Having reviewed the evidence and testimony, the Court finds and concludes that Bresco obtained valid security interests in each transaction, and properly perfected each of those security interests. The Court further finds and concludes that the security interests constitute purchase-money security interests. Because of their purchase-money status, these security interests have priority over the conflicting security interest of Plaintiff. As a result, Defendant's claims are entitled to secured status.

**I. Bresco obtained valid security interests in both the 2010 and 2011 transactions.**

The nature and extent of a security interest in property of the estate is governed by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Easy Living, Inc.*, 407 F.2d 142, 144 (6th Cir.1969). A security interest attaches to collateral when: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has signed a security agreement that contains a description of the collateral. *In re Giaimo*, 440 B.R. 761, 767 (6th Cir. BAP 2010); Ohio Rev.Code § 1309.203(A)–(B). Plaintiff contends that the third requirement is not fulfilled.

At trial, the Court received into evidence several agreements executed by representatives of the Debtor. Beginning with the 2010 transaction, Debtor entered into a "Purchase Agreement" with Bresco dated November 1, 2010. This agreement itemizes all of the equipment and materials sold. The last paragraph of the agreement specifically reads: "Buyer grants Security Interest in on site existing DVR Security System, including above listed equipment and all existing cameras, computers, servers and monitors." This transaction is not in dispute.

In the 2011 transaction, Debtor entered into a "Purchase Agreement" with Bresco dated November 1, 2011. This Purchase Agreement, unlike the 2010 document, did not indicate intent to grant a security interest. Debtor also executed a "Service Agreement" with Bresco dated November

1, 2011. This agreement identifies the collateral, and reads "Customer will sign a note for the purchase price and grant a security interest in the equipment installed."

The Court finds that Bresco obtained a valid security interest in the 2011 transaction. No specific words or formalized documents are required to create a security agreement. *Giaimo*, 440 B.R. at 768. However, there must be some written documentation of the parties' intent to create a security interest. *Id.* Plaintiff contends that the Defendant does not have a security interest because the 2011 Purchase Agreement does not purport to grant one. However, the Court is not limited to looking only to this agreement. The Court finds that the language in the 2011 Service Agreement evidences intent to create a security interest and is sufficient to form a security agreement under Ohio law.

## II. Bresco properly perfected its security interests.

Under Ohio law, the perfection of security interests is governed by Ohio Rev.Code § 1309.310. Generally, a financing statement has to be filed with the office of the secretary of state to perfect a non-possessory security interest in goods. Ohio Rev. Code § 1309.501(A)(2). However, a financing statement has to be filed in the office of the county recorder instead of the office of the secretary of state if (1) the financing statement is filed as a fixture filing, and (2) the collateral consists of goods that are, or are to become, fixtures. Ohio Rev.Code § 1309.501(A)(1). The term "fixture filing" is defined as "a financing statement covering goods that are or are to become fixtures and satisfying divisions (A) and (B) of section 1309.502." Ohio Rev.Code § 1309.102(A)(40).

Examining the facts of this case, Bresco filed two financing statements with the Ohio Secretary of State's office, one on December 1, 2010, and another on November 1, 2011. If the goods are not fixtures, Bresco's filings meet the standard for perfection under state law. However, these two financing statements were not filed with the Franklin County recorder's office. Therefore, if the goods are fixtures, Bresco failed to perfect its security interests.

A "fixture" is defined as "goods that have become so related to particular real property that an interest in them arises under real property law." Ohio Rev.Code § 1309.102(A)(41). To make this determination, Ohio courts weigh three factors:

(1) Actual attachment of the personal property to the real property;

(2) Appropriation of the personal property to the use or purpose of the part of the real property with which it is connected; and

(3) The intention of the parties that the personal property become a permanent part of the real property.

*In re Cluxton*, 327 B.R. 612, 615 (6th Cir. BAP 2005); *Teaff v. Hewitt*, 1 Ohio St. 511, 530 (1853).

When an item has an appropriate use associated with its installation, it becomes "an integral and necessary part of the whole premises and ordinarily it would not be taken out or dismantled until it was worn out by use." *Showe Mgmt. Corp. v. Kerr (In re Kerr)*, 383 B.R. 337, 342 (Bankr.N.D.Ohio 2008). Ohio courts have held that the level of actual annexation may be slight. *Id.* The intention to make personal property a fixture can be inferred from the difficulty with which the item is "capable of severance without material harm to the realty." *Id.* Use and intent are the most important factors. *Masheter*

*v. Boehm*, 37 Ohio St.2d 68, 73–74, 307 N.E.2d 533 (1974).

■ The collateral includes several pieces of electronic equipment and related hardware. There are security cameras attached to the buildings merely by screws. They are removable, and in fact have been relocated when necessary, with no harm to the buildings. It is anticipated that periodically the cameras will be replaced to keep pace with technological advances. The wires, track mold, and other miscellaneous hardware used to mount the cameras are also removable. The controller for the wireless internet equipment is a computer attached to a rack, which is freestanding. These items are removable with no harm to the buildings. The wireless access points are attached with screws and can be easily removed or moved. Finally, Mr. Beatty and Mr. Deibel testified that there was no intent to make any of these items permanent additions to the property.

The Court finds that the pieces of collateral are not fixtures under Ohio law. First, the level of attachment to the property is slight. Mere screws attach some of the items while others are freestanding. With little or no harm, they are removable. Second, the items benefit the business conducted on the property, not the property itself. They are not integral parts of the real estate. The items are easily moved and replaced. Finally, and most importantly, the parties did not intend for the items to become fixtures.

Because none of the goods meet the definition for a fixture under Ohio law, neither of the financing statements can constitute a "fixture filing" as that term is defined in Ohio Rev.Code § 1309.102(A)(40). Bresco's choice to check the box for "fixture filing" on the attachments to each of the financing statements does not change this result. Since they are not fixture filings, the general rule applies, and Bresco's filings with the Ohio Secretary of State were sufficient to perfect its security interests in the collateral.

### III. Bresco's security interests are purchase-money security interests, entitling them to priority over Plaintiff's security interest.

■ The parties do not contest that Plaintiff holds a security interest in the collateral that was perfected prior to those of Bresco. Plaintiff asserts that its security interest is first in priority, and that because of the size of its claim, no equity remains in the collateral upon which the Bresco security interests may attach. *See* 11 U.S.C. § 506. On the other hand, Defendant argues that the Bresco security interests are purchase-money security interests, entitling them to priority over Plaintiff's security interest.

Generally, the first to perfect takes priority. Ohio Rev.Code § 1309.322(A)(1). However, a perfected purchase-money security interest in goods other than inventory or livestock, has priority over a conflicting security interest in the same goods so long as the security interest is perfected before the debtor receives possession of the collateral, or within twenty days later. Ohio Rev.Code § 1309.324(A). A security interest in goods is a purchase-money security interest to the extent that the goods secure an obligation incurred as all or part of the price of the collateral. Ohio Rev. Code § 1309.102(A)(1)–(2) and (B)(1).

In this case, the Debtor incurred the obligations with Bresco as part of the purchase price of the collateral received in the 2010 and 2011 transactions. Therefore, the security interests are purchase-money security interests. If Bresco perfected its security interests before the Debtor received possession of the collateral, or with-

in twenty days later, they are entitled to priority.

With respect to the 2010 transaction, the Court received testimony from Mr. Beatty that installation was completed no later than December 8, 2010. Bresco perfected its first security interest when it filed its financing statement on December 1, 2010. Likewise, Mr. Beatty testified installation of the 2011 goods was completed almost immediately after their purchase on November 1, 2011. Mr. Deibel corroborated this testimony, indicating installation was completed no later than November 8, 2011. Bresco perfected its second security interest when it filed its financing statement on November 1, 2011. In both situations, the parties satisfied the requirements of the statute. As a result, Bresco's purchase-money security interests have priority over Plaintiff's conflicting security interest.

 The Court notes that, even if the security interests had not been perfected, those unperfected security interests would still be entitled to secured status in this case. The doctrine of marshaling of assets applies when a senior creditor holds a lien on two funds belonging to a common debtor, and a junior creditor holds a lien upon only one of the funds. *Homan v. Michles,* 118 Ohio App. 289, 290–291, 194 N.E.2d 162 (1963). Under the doctrine, a senior creditor cannot exercise its rights against property in such a way that its interests would be satisfied to the exclusion of other claimants. *Id.*

 Here, Plaintiff holds a large claim valued at $31,750,708.03, secured by both the real property and the collateral covered by Bresco's security interests. The real property is valued at $32,500,000.00, and thus has sufficient equity to pay Plaintiff's claim in full. Applying the doctrine, Plaintiff cannot assert that Bresco's security interests, if unperfected, lack equity under 11 U.S.C. § 506, since it has another fund from which it may wholly satisfy its debt.

## IV. Issues ancillary to the validity and extent of Bresco's security interests do not require a finding that Defendant's claims are unsecured.

Finally, Plaintiff makes three ancillary arguments. First, Plaintiff asserts in its complaint that the claims at issue are unsecured because the collateral is no longer owned by the Debtor. The collateral is in the Debtor's possession, and there is no evidence to the contrary.

Second, Plaintiff asserts that the doctrine of *lis pendens* may prevent attachment or perfection of Bresco's 2011 security interest due to the filing of a foreclosure complaint. The parties refer several times in their pleadings to such an action, but provided no evidence or testimony about the action, the date it was filed, the date it was served, or the property involved in the action. Without evidence, this Court cannot make a determination as to the applicability of *lis pendens.* Therefore, Plaintiff has not met its burden on this claim.

Finally, Plaintiff urges the Court to find the claims at issue unsecured based upon certain orders previously entered in the underlying bankruptcy case. These orders include: (a) the Agreed Final Order Authorizing Debtor to Use Certain Rents entered December 27, 2011 (Doc. No. 50), and (b) the Agreed Order Regarding Motion of MTGLQ Investors, L.P. for Hearing to Determine Value of Collateral, Approving Notice of Such Hearing and For Related Relief (Doc. No. 323). Plaintiff also references a stipulation with the Debtor that was never made part of an order signed and subject to interpretation by this Court.

Reviewing the orders, neither includes a determination of the validity, extent, or

priority of the Bresco security interests in comparison to those of Plaintiff, or the secured status of Defendant's claims. As part of their terms, these orders do prevent the Debtor from raising certain claims and defenses. However, they do not prohibit Bresco, the Defendant, or any other party from asserting claims or defenses against the Plaintiff. It does not appear that Bresco, the Defendant, nor any other party besides the Debtor and Plaintiff negotiated the terms of these agreed orders. The orders relate to the use of cash collateral and a valuation in the underlying bankruptcy case. This adversary proceeding is the proper forum for determining the validity, extent, and priority of the security interests and the status of the claims. Fed. R. Bankr.P. 7001.

For all these reasons, the Court **FINDS AND CONCLUDES** that Bresco obtained and perfected security interests in the collateral, that such interests take priority due to their purchase-money status, and that Defendant's claims are entitled to secured status. Based upon the scheduled value of the collateral, the claims of Defendant are fully secured.

The Court will enter separate orders in this case and in the underlying bankruptcy case in accordance with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**