SILVER CREEK SUPPLY, APPELLANT AND CROSS-APPELLEE, *v.* POWELL ET AL.; BLANCHARD STATION ELEVATOR, APPELLEE AND CROSS-APPELLANT.

(No. 6-85-9—Decided February 27, 1987.)

*Bradford W. Bailey,* for Silver Creek Supply.

*David J. Schwemer,* for Jack Powell, Marie Powell and Judd Powell.

*Richard Wallace,* for Blanchard Station Elevator.

WILKOWSKI, J. This case comes before the court on an appeal and cross-appeal from a judgment of the Hardin County Court of Common Pleas, wherein the trial court, after hearing evidence on the matter, determined that plaintiff-appellant, Silver Creek Supply, failed in its attempt to create a security interest and, as such, could not maintain a claim of conversion against Blanchard Station Elevator.

On January 26, 1984, Silver Creek Supply ("Silver Creek") filed a complaint against defendants Jack and Marie Powell, their son Judd Powell, and John Doe Elevator, subsequently amended to Blanchard Station Elevator. With respect to the Powells, plaintiff sought damages for default on an account plus conversion of secured crops. Concerning Blanchard Station Elevator, Silver Creek alleged that Blanchard Station Elevator had wrongfully converted crops which were subject to a perfected security interest. Silver Creek's claim was originally supported by account ledgers, affidavits and other documents. The documentation purported to indicate that Silver Creek had a perfected security interest in all the crops located in McDonald Town-

ship belonging to Jack and Marie Powell.

The record indicates that from approximately 1979 through 1983, Jack and Marie Powell had an open, unsecured account with Silver Creek for the purchase of farm supplies. In 1983, Jack and Marie Powell requested additional funds for the preparation of their spring and summer agricultural crops. Due to the rising line of credit currently extended to the Powells, Silver Creek's manager, Doug Reed, requested that the Powells execute a security agreement, which would grant Silver Creek a secured interest in the crops. The Powells agreed and executed a document which purported to be recognition of the security agreement between the parties. This document was entitled a financing statement, rather than a security agreement. Unsupported by any other documentation between the parties, the Powells signed the financing statement which contained a description of the collateral. This financing statement, which is the focal point of the appeal, states:

"Full interest in all crops grown on 162.6 Acres, VMS 10311, McDonald Township, Hardin County. The holders of said real estate are Jack and Marie Powell.

"Full interest in all crops grown on 61 acres, VMS 11035, McDonald Township, Hardin County. The holders of record of said real estate are Jack and Marie Powell.

"Prepared by Silver Creek Supply."

The document also contained the debtors' names, the "secured party's name and address," and the signatures of the debtors (Powells) and the "secured party" (Silver Creek by and through Doug Reed).

The parties having executed the document, Silver Creek advanced the necessary funds for the purchase of herbicide, fertilizer and seed for the 1983 agricultural crops, which included corn, wheat and soybeans.

At harvest, the Powells delivered and sold the wheat, soybeans and a thousand bushels of corn to Foraker Elevator. The checks were made payable jointly to Silver Creek and Jack Powell. Upon proper endorsement, the entire proceeds of the check for the soybeans and corn were set off against the Powells' account with Silver Creek. However, a dispute then arose between the Powells and Silver Creek as to the proceeds for the bushels of wheat. Jack Powell contended that the parties had agreed to divide equally the proceeds for the wheat, so as to allow the Powells to cover their basic, cost-of-living needs and some essential costs related to the operation of their farm. Silver Creek refused to divide the proceeds.

Unable to subsist without the basic living allowances, the Powells, on November 8 and 9, delivered and sold additionally harvested corn to Blanchard Station Elevator ("Blanchard Station"). The Powells informed Blanchard Station personnel that the corn was not subject to any liens, loans or mortgages. The proceeds from the sale were made payable to Judd Powell (their son). Marie Powell then obtained possession of the check, endorsed Judd Powell's signature, and cashed the check, with the proceeds being used for their basic needs.

An action was subsequently filed by Silver Creek against the Powells and Blanchard Station. After various judgments had been entered concerning the Powells' liability, the sole controversy left for trial concerned Blanchard Station's responsibility for the alleged conversion.

On August 5, 1985, the trial court entered its findings of fact and conclusions of law. Said entry was appropriately journalized on August 19,

1985, wherein the trial court found that the financing statement, alone, did not satisfy the Ohio Revised Code's provisions for the creation of a security interest. Absent the appropriate documentation for the creation of a security interest, the trial court concluded that Silver Creek did not perfect a security interest and that Blanchard Station did not convert the crops. From said judgment, Silver Creek filed an appeal contending that the trial court erred in its determination concerning the creation of a security interest.

Appellee Blanchard Station, on appeal and cross-appeal, sets forth two basic arguments in its defense. First, appellee argues that the trial court was correct in its determination that no security interest had been created and therefore no conversion had occurred. Alternatively, in the cross-appeal, Blanchard Station argues that even if Silver Creek had properly created a security interest and perfected its interest, Silver Creek is estopped from collecting on the proceeds based upon Silver Creek's past course of conduct, which constituted a waiver. Blanchard Station concedes that its alternative argument, on cross-appeal, need not be addressed if this court affirms the lower court's decision that no security interest had been created and perfected.

Although Silver Creek has raised two assignments of error, together they raise only one issue for review. The issue raised concerns whether a creditor, Silver Creek, can assert a secured claim against a third party, Blanchard Station, when no formal security agreement was executed and the only documentation evidencing the creation of a security interest between the debtors, the Powells, and the creditor, Silver Creek, is a financing statement filed in Hardin County. The question concerning the utilization of a financing statement as evidence that the parties have entered into a security agreement, while addressed by outside jurisdictions, presents a novel question for review by this court and requires special adherence to Ohio's adoption of Article 9 of the Uniform Commercial Code, R.C. 1309.01 *et seq.*

R.C. Chapter 1309 sets forth the basic statutory provisions detailing the creation, attachment and perfection of a secured interest in a debtor's collateral. The chapter contains various sections which delineate the different requirements and responsibilities of the parties when the secured transaction involves specific goods, especially crops. At the heart of the chapter stands R.C. 1309.14, which details the attachment and enforceability of a secured interest and the formal requisites.

Subsection (A) of R.C. 1309.14 states:

"* * * [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

"(1)   the collateral is in the possession of the secured party pursuant to agreement, or *the debtor has signed a security agreement* which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

"(2)   value has been given; and

"(3)   the debtor has rights in the collateral." (Emphasis added.)

As evidenced by the earlier statement of facts as well as the briefs submitted, the transaction involved appellant's attempt to create an enforceable security interest in the Powells' crop. There can be no question from the statement of facts that Silver Creek and the Powells attempted to create a secured interest in the crops. The only question concerns

whether their failure to execute a security agreement or other documents, instead of only a financing statement, constituted a failure on behalf of the parties to create an enforceable security interest. In that respect, appellee concedes that in this transaction value has been given and that the debtors had rights in the collateral, thus satisfying the latter two requirements for the creation of an enforceable security interest, pursuant to R.C. 1309.14. Accordingly, we review only the first requirement: whether Silver Creek, holder of a nonpossessory interest in the crops, was required to obtain the debtors' signatures on a *security agreement* which contained a description of the collateral and the lands, or whether the debtors' signing of a *financing statement,* as presented herein, sufficiently meets the "security agreement" requirements.

R.C. 1309.01(A)(12) defines "security agreement" as "* * * an agreement which creates or provides for a security interest." " 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance * * *[.]'' R.C. 1301.01(C).

From the jaws of the broadly defined definition of "agreement," as well as the proffered liberalized approach concerning the recognition of security interests as set forth in R.C. 1309.02[1] and 1301.02,[2] appellant advocates that the financing statement, coupled with the oral testimony of the parties indicating their intent to create a security interest, constitutes a sufficient basis to find that a security agreement was created. This conclusion would then justify the enforcement of the secured claim, since it was duly filed, and therefore perfected, in Hardin County. Appellee, on the other hand, requests that this court pay due homage to the policy underlying the requirements for written documentation, *i.e.,* the questions and problems posed by this special "Statute of Frauds," and therefore seeks that this court find that a financing statement, standing alone, without the language of a security agreement, cannot be a security agreement.

Although supporting case law in Ohio is limited with respect to the factual circumstances at bar, case law gives some guidance concerning the formal requirements for the creation and recognition of a security interest which, as indicated by R.C. 1309.14, must be in writing, signed by the debtor and contain a description of the collateral and the land.

The creation of a security interest

---

[1] R.C. 1309.02(A)(1) states:

"(A) Except as otherwise provided in section 1309.04 of the Revised Code on excluded transactions, sections 1309.01 to 1309.50 of the Revised Code apply:

"(1) To any transaction, *regardless of its form,* which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts * * *." (Emphasis added.)

[2] R.C. 1301.02 states, in part:
"(A) Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code shall be liberally construed and applied to promote their underlying purposes and policies.

"(B) Underlying purposes and policies of such chapters are:

"(1) to simplify, clarify, and modernize the law governing commercial transactions;

"(2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(3) to make uniform the law among the various jurisdictions."

does not mandate the usage of a form or document so entitled, nor does it require any magical recitation of language to establish the existence of a security interest. *In re Walter W. Willis, Inc.* (N.D. Ohio 1970), 313 F. Supp. 1274, 1278, 30 Ohio Misc. 75, 81, 55 O.O. 2d 401, 404, affirmed (C.A. 6, 1971), 440 F. 2d 995; Comment, Liberal Constructions of the Definition of a Security Agreement under Section 9-203 of the Uniform Commercial Code: Policy Implications and Practical Limitations (1984), 57 Temple L. Q. 791; but, see, *In re Cambridge* (W.D. Mo. 1983), 34 Bankr. 88; Nickles, A Localized Treatise on Secured Transactions—Part II: Creating Security Interests (1981), 34 Ark. L. Rev. 559, 571-607. As the Sixth District Court of Appeals stated in *Steego Auto Parts Corp.* v. *Markey* (1981), 2 Ohio App. 3d 200, 2 OBR 218, 441 N.E. 2d 279, paragraph two of the syllabus:

"No special form of words is required to give rise to a security interest; * * * it is necessary that an intent to grant or to create a security interest be manifested by the parties in the *written* security agreement." (Emphasis added.)

Following this rationale, a security interest was found to have existed where a signed security agreement and duly filed financing statement were presented. (The security agreement did not specifically state that a security interest was being granted.) *Id.* Cf. *Suzzi, Inc.* v. *Atlantic Dept. Stores, Inc.* (1976), 49 Ohio App. 2d 65, 3 O.O. 3d 125, 359 N.E. 2d 721 (the court held that a creditor acquires an enforceable security interest in collateral only by compliance with R.C. 1309.14).

The foregoing cases indicate that no specific formalized document must be executed and filed between the parties to create a perfected security interest. A security interest will be found to have been created where there is a *written document* which sufficiently evidences the parties' intent to create a security interest. In this respect, we note that two recent bankruptcy decisions, interpreting Ohio statutory provisions, have addressed the evidentiary requisites for the creation of a security interest. Though these two cases indicate, through their broadly stated language, that the creation of a security interest may be evidenced by a writing or *other circumstances,* and therefore provide some support for the argument that if the financing statement, standing alone, does not create a security interest parol evidence may be used, we decline to take such a broad step. Instead, we adhere to the specific writing requirements of R.C. 1309.14 and to the well-settled rule that the "existence of a nonpossessory security interest must be evidenced by a writing or writings which demonstrate the parties['] intent to create the interest. * * *" *In re Smith* (N.D. Ohio 1985), 47 Bankr. 482, 483; *In re Hite* (N.D. Ohio 1980), 4 Bankr. 547; *In re Numeric Corp.* (C.A. 1, 1973), 485 F. 2d 1328. See, also, *In re Bollinger Corp.* (C.A. 3, 1980), 614 F. 2d 924, 926; White & Summers, Uniform Commercial Code (2 Ed. 1980) 902, 903, 905, Section 23-3.

From the foregoing cases, including those referring to Ohio fact patterns, the growing trend requires the court to review all the documents between the parties to determine whether a sufficient *written* foundation has been established for the creation of a security interest.[3] The court's

---

[3] This approach, sometimes referred to as the "composite documents" approach, fails in some respects: for instance, instead of clarifying the law by mandating the existence of a security agreement, the determination of a security interest now rests

review is not limited to the security agreement and/or financing statement.

While the complexity and confusion which arises from a review of submitted documents may prove difficult, the resolution of the matter in an equitable manner, requiring the review of a variety of documents, is clearly more advantageous and is consonant with the language of R.C. 1309.02, which implies that security interests should be recognized whenever the parties so intend.

Arising out of the building blocks of the foregoing rationale is a single, simple concept, analogous to various forms of contract law, which requires that if the parties intend to enter into an enforceable agreement which gives rise to a security interest, an acceptable written document or documents must be executed and filed by the parties.[4] Said written requirements, though, may include not only a written document, signed by the debtor and containing a description of the crops and land, but also other documents which establish that the parties manifested an intent to create a security interest. Cf. *In re McCormick* (E.D. Mich. 1982), 24 Bankr. 718.

As we review appellant's sole documentation, the financing statement, we note the irony that has developed by statute and case law, which recognizes that a security agreement may serve as a financing statement, if duly filed, R.C. 1309.39(A) and (E), but in general a financing statement, in and of itself, does not constitute a security agreement subject to enforceability, attachment and perfection. *In re Bollinger Corp., supra,* at 926. This result is amply supported in case law, despite the fact that a financing statement, properly completed, will contain the name of the parties, the debtor's signature, and a description of the collateral and land. Established precedent, however, provides little indication to recognize a financing statement as a security agreement, for as the cases indicate, a standardized financing statement, unsupported by other documentation, is intended merely to serve as notice to the general public and was not borne out of an attempt by the legislature to constitute a security agreement. *Id.* at 926-297; *In re Hite, supra,* at 549.

The approach of not recognizing a standardized financing statement as a security agreement, though arguably against the code's provision for a liberalized approach to commercial law, serves as an equitable restriction on the parties' conduct, while simultaneously paying due respect to the principles underlying the "Statute of Frauds," as well as serving the necessary evidentiary functions re-

---

upon the many documents which propose to establish the agreement between the parties. Recent Cases, Formal Requirements of Uniform Commercial Code § 9-203(1)(a) are Satisfied when a Financing Statement, a Promissory Note and the Course of Dealing Between the Parties Collectively Reveal an Intent to Create or Provide for a Security Interest — *In re Bollinger Corp.* — (1981), 50 U. Cin. L. Rev. 225, 235-236.

[4] The necessity for written documentation eliminates the potential for abuse by bickering parties and no longer rests the case on matter brought to the court's attention by way of parol evidence. In fact, a fully prepared document constituting a security agreement, if properly completed, will set out not only the existence of a security interest, but also the rights, responsibilities, and liabilities of the parties, thereby preventing the potential for future disputes. The advantages gained by such documentation, readily apparent from the facts of this case, wherein the Powells and Silver Creek dispute the distribution of proceeds, will generally be recognized where there is a written agreement.

quired. Official Comments 3 and 5 to R.C. 1309.14 (UCC 9-203); *Ray* v. *City Bank & Trust Co. of Natchez, Miss.* (S.D. Ohio 1973), 358 F. Supp. 630; Comment, Liberal Constructions of the Definition of a Security Agreement, *supra.*

There are cases, however, where the financing statement may contain language sufficient to evidence an agreement between the parties to create a security interest. See, *e.g., In re Frazier* (M.D. Tenn. 1981), 16 Bankr. 674, 679, wherein a security interest was found to exist where the document, which on its front side stated that it was a "Financing Statement and Security Agreement," contained several provisions including one which stated: "13. That it is the intention of the parties that this instrument shall serve both as a 'Financing Statement' and 'Security Agreement' as authorized by law. * * *" (Emphasis deleted.) Standardized forms of this nature are readily available and clearly satisfy the requirements of R.C. 1309.14. Although, as we noted previously, the basic purpose of the financing statement is to provide notice to outside creditors that a secured claim has been perfected, in the foregoing situation, a financing statement which contains additional language concerning the terms of the parties' agreement certainly equates to the documents generally prepared as a security agreement. For it is the purpose of the security agreement to set forth the parties' agreement as to the existence of a security interest and the necessary terms and conditions therein. Financing statements containing said language satisfy all the necessary documentation and meet the necessary requirements.

Within the basic precepts of the foregoing rationale, and applying it to the only document submitted on behalf of appellant, we find that the financing statement herein fails to adequately evidence that the parties manifested, in writing, an intent to create a security interest. Though the parties testified, by way of parol evidence, as to their intent to create a security interest, oral testimony was not proper for this purpose. Only the written documentation may establish the existence of a security interest. Parol evidence is admissible only after there is sufficient language in writing to meet the requirements of R.C. 1309.14(A). Unlike the many other cases which, with the aid of additional documentation, hold that a security interest was created, no supporting documents or language on the financing statement adequately evidences the parties' intent to create a security interest. Holding as did the trial court, we find that there was no foundation for recognition of the creation, perfection and enforcement of a security interest. See *In re Smith, supra* (financing statement, loan agreement and promissory note when considered together sufficiently manifested the parties' intent to give creditor a security interest in the crops of the debtors); *In re McCormick, supra* (application for a certificate of title and issuance of the certificate satisfied the requirement for a security agreement); *In re Frazier, supra* (financing statement containing language referring to a secured interest constitutes a security agreement); *In re Hite, supra* (promissory note plus financing statement constitutes a security agreement); *In re H.L. Clement Co.* (W.D. Penn. 1981), 12 Bankr. 165 (financing statement and ambiguous supporting documents were insufficient to constitute a security agreement).

In light of the foregoing, we find that appellant's first and second assignments of error are not well-taken.

Having found against appellant on its assignments of error, we need not

address the alternative arguments proffered on behalf of appellee in its cross-appeal. Accordingly, appellee's three assignments of error raised on cross-appeal are found not well-taken.

On consideration whereof, this court finds that substantial justice was done the parties complaining, and the judgment of the Hardin County Court of Common Pleas is affirmed. This cause is remanded to said court for further proceedings according to law and for assessment of costs. Costs against appellant.

*Judgment affirmed.*

HANDWORK, P.J., concurs.

RESNICK, J., concurs in judgment only.

HANDWORK, P.J., RESNICK and WILKOWSKI, JJ., of the Sixth Appellate District, sitting by assignment in the Third Appellate District.