ELECTRONIC CITATION:  2010 FED App. 0011P (6th Cir.)
File Name:  10b0011p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: EVONNE M. GIAIMO, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| WILLIAM TODD DROWN, TRUSTEE, | ) | |
| | ) | |
| Appellee, | ) | No. 10-8029 |
| | ) | |
| v. | ) | |
| | ) | |
| MAUREEN PERFECT, EXECUTOR OF | ) | |
| THE ESTATE OF VERONICA O'KEEFE, | ) | |
| | ) | |
| Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio
Case No. 09-56557, Adv. No. 09-02364

Decided and Filed:  December 29, 2010

Before:  FULTON, HARRIS, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Michael T. Gunner, Hilliard, Ohio, for Appellant.  William Todd Drown, Nancy Ashbrook Willis, FOLLAND & DROWN LPA, Mount Vernon, Ohio, for Appellee.

---

**OPINION**

---

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. In this appeal, Maureen Perfect, Executor of the Estate of Veronica O'Keefe ("O'Keefe") appeals the bankruptcy court's order granting summary judgment on the Trustee's complaint to avoid her lien on the vehicle of chapter 7 debtor, Evonne Giaimo ("Debtor"). For the reasons that follow, we REVERSE the order of the bankruptcy court.

## I.    ISSUE ON APPEAL

The issue presented by this appeal is whether an application for certificate of title to a motor vehicle and a certificate of title, both identifying the lienholder, are sufficient under Ohio law to create a security interest in a vehicle.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1484, 1497 (1989) (citations omitted). The bankruptcy court's grant of summary judgment to the Trustee is a final appealable order which we review *de novo*. *See Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Id*. (citation omitted).

### III. FACTS

On June 11, 2009, Evonne M. Giaimo ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Listed on the Debtor's schedules of assets was a 2008 Toyota RAV 4. The Debtor purchased the vehicle in February 2008, with an interest free loan from her grandmother, Veronica O'Keefe ("O'Keefe").[1] The Debtor and O'Keefe did not execute any formal loan documents.

William Todd Drown ("Trustee") was appointed chapter 7 trustee of the Debtor's bankruptcy estate. The Debtor provided the Trustee with the Application for the Certificate of Title prepared by the dealership where the vehicle was purchased. The application contained a description of the vehicle, identified O'Keefe as the lienholder, and was signed by the Debtor. The Debtor also provided the Trustee with the Ohio Certificate of Title to the vehicle which also identified O'Keefe as lienholder. At the meeting of creditors, the Debtor testified that these are the only documents regarding O'Keefe's lien and security interest in the vehicle. Apart from these two documents, there is no evidence of a written security agreement between the Debtor and O'Keefe.

On August 9, 2009, the Trustee filed an adversary complaint, pursuant to 11 U.S.C. § 544, seeking to avoid O'Keefe's purported security interest and lien on the ground that there was no written security agreement between the Debtor and O'Keefe as required by Ohio law to create a valid security interest in the vehicle. O'Keefe asserted, however, that the application and certificate of title were sufficient. She further asserted that there is no requirement to produce a written security agreement because, pursuant to Ohio Revised Code § 4505.13(B), once the clerk of court noted the lien on the vehicle's certificate of title, it was valid against all creditors of the Debtor.

On February 22, 2010, the bankruptcy court heard argument on the Trustee's motion for summary judgment. Counsel for both parties agreed that the facts were not in dispute. The bankruptcy court agreed with the Trustee that Ohio law requires a written security agreement, and that because no such agreement was presented, the Trustee was entitled to summary judgment. On

---

[1] In an agreed order dated December 8, 2009, Maureen Perfect, Executor of the Estate of Veronica O'Keefe, was substituted for defendant, Veronica O'Keefe, who died.

3

February 25, 2010, the bankruptcy court entered a written order granting summary judgment in favor of the Trustee.

On March 8, 2010, O'Keefe filed a motion pursuant to Federal Rule of Bankruptcy Procedure 7052(b)(1) requesting that the bankruptcy court make findings of fact and conclusions of law on the Trustee's motion for summary judgment. On March 16, 2010, O'Keefe filed a motion to stay the execution and enforcement of the order avoiding her lien including any requirement that the vehicle be turned over. On April 19, 2010, the court issued separate orders denying each of these motions because sufficient basis for the requested relief was not provided. On April 27, 2010, O'Keefe timely filed a notice of appeal seeking reversal of the bankruptcy court's order granting the Trustee's motion for summary judgment. *See* Fed. R. Bankr. P. 8002(b)(1).

## IV. DISCUSSION

Pursuant to 11 U.S.C. § 544(a)(1), a bankruptcy trustee may avoid any transfer of property of the debtor that would be voidable by a judgment lien creditor. 11 U.S.C. § 544(a)(1). As a hypothetical judgment lien creditor, the trustee is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 544(a)(1); *Palmer v. Washington Mut. Bank (In re Ritchie)*, 416 B.R. 638, 643 (B.A.P. 6th Cir. 2009). Under § 544(a)(1), if a lien against the debtor's property was improperly perfected, or not perfected at all, before the bankruptcy petition was filed, the trustee may take priority. "However, it is not even necessary to visit the issue of perfection until it has been determined that a valid security interest exists in the vehicle in dispute." *Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722, 725 (Bankr. N.D. Ohio 1999). The issue in this case is not whether O'Keefe properly perfected her interest in the Debtor's vehicle on the certificate of title, but rather whether O'Keefe has a valid security interest in the Debtor's vehicle.

Whether O'Keefe has a valid security interest in the Debtor's vehicle is governed by Ohio law. *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 918 (1979) (property rights in a debtor's assets are determined by state law); *In re Ritchie*, 416 B.R. at 643. Initially, the parties to this appeal disagree as to what Ohio law applies. The Trustee asserts that the issue is controlled by Article 9 of the Uniform Commercial Code ("UCC"), as adopted and enacted by Ohio, while

4

O'Keefe argues that Ohio's Certificate of Title Act, in particular Ohio Rev. Code § 4505.13, controls.[2]

"Under Ohio law, perfection of a security interest is generally accomplished through the filing of a financing statement. However, this method of perfection is inapplicable in the case of motor vehicles." *Rhiel v. Wells Fargo Fin. Acceptance (In re Fields)*, 351 B.R. 887, 890 (Bankr. S.D. Ohio 2006) (citing Ohio Rev. Code §§ 1309.310(A) and 1309.311(A)(2)). Under Ohio's Certificate of Motor Vehicle Title Act, except for vehicles held as inventory, the notation of a lien on the vehicle's certificate of title is the exclusive manner by which a security interest is perfected in a motor vehicle. O'Keefe asserts that how a creditor becomes a secured party under Ohio Revised Code § 1309.203 is irrelevant as to how one becomes secured under § 4505.13(B):

> The Clerk of Common Pleas Court <u>alone</u> makes the determination if a security interest exists whether by production of a security agreement pursuant to R.C. § 4505.13(B) or the providing of evidence of a security interest via electronic means. R.C. § 4505.13(C)(1). The clerk is not required nor permitted to keep

---

[2] Ohio Revised Code § 4505.13 provides, in pertinent part:

§ 4505.13. Security interests in motor vehicles, ... dealer inventory

(A)(1) Chapter 1309 . . . do[es] not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle . . .
(B) [A]ny security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor . . . and against subsequent purchasers, secured parties and other lienholders or claimants. . . .

The secured party, upon presentation of evidence of a security interest to a clerk of a court of common pleas, together with the certificate of title if a physical certificate of title for the motor vehicle exists . . . may have a notation of the security interest made. . . .

. . .

(C)(1) In all cases, a secured party may choose to present a clerk with evidence of a security interest via written confirmation through electronic means, and the clerk shall enter the security interest into the automated title processing system.

> copies of the security agreement or electronic notification of the security interest R.C. § 4505.13(A)(1), thus once the clerk has noted the lien on the title it is effective against creditors of the Debtor, subsequent purchasers, secured parties, other lienholders or claimants R.C. § 4505.13(B).

(Appellant's Br. at 6.)

While O'Keefe is correct that Ohio Revised Code § 4505.13 governs the *perfection* of liens on motor vehicles, Article 9 of the UCC continues to govern how a lien is *created*. In a leading treatise often cited by the Ohio Supreme Court in decisions interpreting Ohio's version of the UCC,[3] Professors White and Summers explain the interplay between Article 9 and other state laws:

> Even where the security interest in personalty is consensual, other state law may govern. Usually this other state law will govern only a relatively limited aspect of the transaction, with Article 9 remaining applicable to all other aspects. The prime example is a state "certificate of title" law specifying the mode of perfecting a security interest in a motor vehicle. Article 9 itself contemplates the existence of these title laws, and expressly gives way to them in regard to filing. [*see* § 9-311(a)] But even though some of these laws also include priority rules, those rules do not control when in conflict with Article 9 unless the state legislature specifically so provides.

4 White & Summers, *Uniform Commercial Code*, § 30-12 (6th ed. 2010) (footnotes omitted). Ohio Rev. Code § 1309.311(A)(2) so contemplates Ohio's Certificate of Title Act and gives way to it in regard to filing in providing that the "filing of a financing statement is not necessary or effective to perfect a security interest in property subject to . . . Chapters . . . 4505 . . . of the Revised Code . . . ." Section 1309.311 goes on to provide that, except for certain situations which are not applicable here, "duration and renewal of perfection of a security interest perfected by compliance with the requirements prescribed by a statute, regulation, or treaty described in division (A) of this section [such as Chapter 4505] are governed by the statute, regulation, or treaty. In other respects, the security interest is subject to this chapter." Ohio Rev. Code § 1309.311(C). In other words, the Certificate of Title Act governs perfection, duration, and renewal of the security interest, but in all

---

[3] For example, in *Arcanum Nat'l Bank v. Hessler*, 433 N.E.2d 204, 210 (Ohio 1982), the Ohio Supreme Court described White and Summers as "noted authorities on the Uniform Commercial Code[.]"

6

other respects, including its creation, the security interest is governed by Article 9. *See In re Fields*, 351 B.R. at 891 (Ohio's version of UCC Article 9 continued to govern assignment of security interest in motor vehicle perfected under Ohio's Certificate of Title Act); *see also Noland v. HSBC Auto Fin., Inc. (In re Baine)*, 393 B.R. 561, 566 (Bankr. S.D. Ohio 2008) (creditor that failed to note lien on vehicle's certificate of title had valid security interest under O.R.C. § 1309.203; however, security interest was unperfected under O.R.C. 4505.13(B)).

As one court has explained:

> Secured transactions in motor vehicles are governed by the same principles as govern secured transactions in other types of collateral insofar as the creation and effect of a secured transaction therein is concerned. The fact that title certificate notation is required in most states to perfect a security interest in a motor vehicle in the hands of the ultimate user has no effect upon the creation of a security interest in a motor vehicle.

*Bradley v. K&E Invs., Inc.*, 847 S.W.2d 915, 921 (Mo. Ct. App. 1993) (citing 8 *Anderson on the Uniform Commercial Code* § 9-203:8 at 664 (3d ed. 1985)); *see also Wyatt v. Nowlin (In re Wyatt)*, 338 B.R. 76, 80 (Bankr. W.D. Mo. 2006) (while certificate of title statute specifies manner in which lien is perfected, Article 9 continues to govern how lien is created); *Owen v. Lundstrom (In re Owen)*, 349 B.R. 66, 69 (Bankr. D. Idaho 2006) (Idaho's version of Article 9 governs attachment of security interest in vehicle, while Idaho Vehicle Titles Act governs its perfection). Therefore, contrary to O'Keefe's assertions, Article 9 of the UCC, as adopted and enacted by Ohio, governs her claim to a security interest in the Debtor's vehicle.[4]

---

[4] In further support of her position that Article 9 of the UCC is inapplicable here, O'Keefe cites to *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 751 N.E.2d 1019 (Ohio 2001). O'Keefe's reliance on *Saturn of Kings* is misguided. There, the Ohio Supreme Court was faced with competing claims of ownership in several vehicles where the certificates of title had not been transferred. The issue was "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." *Id*. at 1021. In resolving the issue, the court considered the interplay between Ohio's adoption of Article 2 of the UCC and Ohio's Motor Vehicle Title Law. The court held that in determining competing claims of ownership of a motor vehicle, Ohio Revised Code § 4505.04(A) controls over the provisions of the UCC. *Id*. at 1025. Article 2 of the UCC is not at issue here, nor are competing claims of ownership in the vehicle. At issue here is the *validity* of a lien and Article 9 of the UCC. Moreover, Article 9 of the UCC and Ohio's Motor Vehicle Title Law are not in conflict. As explained above, Article 9 governs the *creation* of the lien, while the certificate of title law governs the *perfection* of the lien.

UCC Article 9, governed by Ohio Revised Code §§ 1309.101-1309.709, "applies to . . . [a] transaction, regardless of its form, that creates a security interest in personal property . . . ." Ohio Rev. Code § 1309.109(A)(1). A "security interest" is defined in Ohio Revised Code §1301.01(KK)(1) as "an interest in personal property or fixtures that secures payment or performance of an obligation." At the center of Ohio Revised Code Chapter 1309 is § 1309.203 which sets forth the attachment and enforceability of a secured interest and the formal requisites. *See Silver Creek Supply v. Powell*, 521 N.E.2d 828, 831 (Ohio Ct. App. 1987). Ohio Revised Code § 1309.203 provides:

> (A) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.
>
> (B) Except as otherwise provided in divisions (C) to (I) of this section, a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> (1) Value has been given;
>
> (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> (3) One of the following conditions is met:
>
> > (a) The debtor has authenticated a security agreement that provides a description of the collateral . . . .

The Trustee does not dispute that value was given and that the Debtor had rights in the vehicle, thereby satisfying the first two requirements of Ohio Revised Code § 1309.203. Therefore, the only issue for our review is whether the application for certificate of title and the certificate of title itself, both noting O'Keefe as lienholder, are sufficient to meet the "security agreement" requirement of Ohio Revised Code § 1309.203.

The term "security agreement" is defined as "an agreement that creates or provides for a security interest." Ohio Rev. Code § 1309.102(A)(73). It has been well established that while no specific words or formalized documents are necessarily required to create a security interest, there must be some written documentation that indicates the parties' intent to create a security interest.

8

*See Silver Creek*, 521 N.E.2d at 832; *Steego Auto Parts Corp. v. Markey*, 441 N.E.2d 279, 282 (Ohio Ct. App. 1981).

> It thus appears that no special form of words is required to give rise to a security interest. It is, however, necessary that an intent to grant or to create a security interest be manifested. It would be sufficient if the parties use language which leads to the conclusion that it was the intention of the parties that a security interest be created.

*Id.* (internal quotations omitted). In their treatise on the UCC, Professors White and Summers comment on how easily a secured party can create an enforceable Article 9 security interest under Section 9-203:

> Consider how little suffices to bind the debtor. For example, it is enough for the debtor to write on the back of an envelope, 'I hereby grant bank a security interest in my cattle, John Jones.' If the bank makes a loan and the debtor owns the cattle, the parties created a valid security interest despite its informality.

4 White & Summers, *Uniform Commercial Code*, § 31-2 (6th ed. 2010) (footnote omitted). White and Summers further note:

> [UCC §] 9-203 does not require more [than a showing that parties intended a security interest] for as [Official] comment 3 [to 9-203] states, the writing requirement is a formal requisite 'in the nature of a statute of frauds.' A statute of frauds requirement on the model of 2-201 merely contemplates objective indicia of the possibility of an underlying actual agreement - here an agreement for security.

*Id.* at § 31-3.

Chapter 1309 of the Ohio Revised Code "shall be liberally construed and applied to promote [its] underlying purposes and policies." Ohio Rev. Code § 1301.02(A). Some of those underlying purposes and policies are to "simplify, clarify, and modernize the law governing commercial transactions," and to "permit the continued expansion of commercial practices through custom, usage, and agreement of the parties[.]" Ohio Rev. Code § 1301.02(B)(1) and (2). This liberal approach of the UCC to commercial law was recognized by the Third District Court of Appeals of Ohio in *Silver Creek*, 521 N.E.2d at 833. Additionally, the *Silver Creek* court noted that Ohio

9

Revised Code § 1309.109[5] "implies that security interests should be recognized whenever the parties so intend." *Id.*

Rather than requiring one single document evidencing this intent, courts typically "review all the documents between the parties to determine whether a sufficient *written* foundation has been established for the creation of a security interest." *Silver Creek*, 521 N.E.2d at 832 (emphasis in original). This approach, often referred to as the "composite documents approach," "examines all the documents executed between a debtor and a creditor to determine, if taken together, whether the 'writing or writings, regardless of label, . . . adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon . . . .'" *Belfance v. Buonpane (In re Omega Door Co., Inc.)*, 399 B.R. 295, 306 (B.A.P. 6th Cir. 2009) (quoting *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973)). Official Comment 3 to Ohio Revised Code § 1309.203 explains that the requirement of a writing is "in the nature of a Statute of Frauds."

We are unaware of any Ohio court decisions addressing whether an application for certificate of title and certificate of title, in particular, are sufficient to create a security interest under Ohio Revised Code § 1309.203. Thus, we must interpret the governing state law, and predict what the highest court of Ohio would decide, from "all relevant data" including "state appellate decisions, . . . state supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states." *See Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612, 621 (B.A.P. 6th Cir. 2007) (quoting *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995)).

In trying to predict whether the highest court of Ohio would deem the application for certificate of title and certificate of title in the present case as sufficient to create a security interest

---

[5] Ohio Rev. Code § 1309.109 provides:

> (A) Except as otherwise provided in divisions (C) and (D) of this section, this chapter applies to the following:

> (1) A transaction, *regardless of its form*, that creates a security interest in personal property . . . .

(At the time *Silver Creek* was decided this language was found in § 1309.02.)

under Ohio Revised Code § 1309.203, perhaps the most instructive Ohio appellate court decision is the 1987 decision of the Ohio Court of Appeals in *Silver Creek*. In *Silver Creek*, the only document available that purported to establish a security agreement was a standardized financing statement. The court concluded that while some financing statements may contain language sufficient to evidence an agreement, 521 N.E.2d at 833-34, "the financing statement herein fails to adequately evidence that the parties manifested, in writing, an intent to create a security interest." *Id.* at 834. In doing so, the court distinguished the facts of the case before it from those in other cases where a security interest was created, including *In re McCormick*, where an application for a certificate of title and issuance of the certificate satisfied the requirement for a security agreement under Michigan's version of UCC 9-203. *See Silver Creek*, 521 N.E.2d at 833 (distinguishing *Winshall v. McCormick (In re McCormick)*, 24 B.R. 718 (Bankr. E.D. Mich. 1982)).

Another instructive decision is the bankruptcy court's decision in *Yoppolo v. Trombley (In re DeVincent)*, 238 B.R. 722 (Bankr. N.D. Ohio 1999). In *DeVincent*, the debtor owned a vehicle financed by her sister. The debtor and her sister both signed a promissory note, and the debtor's sister was identified as the lienholder on the certificate of title. The promissory note simply identified the parties, the vehicle, the total purchase price, and the monthly payments to be made, but said nothing about a security interest in the vehicle. When the debtor filed for chapter 7 relief, the trustee sought to avoid the sister's security interest and lien on the grounds that the promissory note lacked the necessary language to create a security interest in the vehicle. The debtor's sister asserted that her lien was perfected by virtue of the promissory note and the lien noted on the certificate of title.

The court looked to Article 9 of the UCC, as enacted by Ohio in chapter 1309, to determine whether the sister had a valid security interest in the vehicle. *In re DeVincent*, 238 B.R. at 725-26. Like the case at hand, the only element of Ohio Revised Code § 1309.203[6] at issue was whether there was a valid security agreement. *Id.* at 725. The debtor's sister argued that the promissory note in conjunction with the notation on the certificate of title that listed her as a lienholder demonstrated

---

[6] At the time *DeVincent* was decided O.R.C. § 1309.203 was found at O.R.C. § 1309.14. Section 1309.14 was repealed on July 1, 2001, and revised and reenacted as § 1309.203.

the necessary intent to create a security interest under the "composite documents" approach. *Id.* at 726. In rejecting the defendant's argument, the court explained that because neither a financing statement, the equivalent of a vehicle's certificate of title, alone, nor a promissory note alone, exhibit the requisite intent to create a security interest, it could not find that the two documents standing together, under the circumstances of the case, demonstrated that the debtor and the defendant intended to create a security interest in the vehicle at issue. *Id*. at 726-27.

In this case, however, in keeping with the liberal policies of the UCC, we hold, and we believe the Ohio Supreme Court would similarly hold, that the application for certificate of title, a document which was not presented in *DeVincent*,[7] and the certificate of title itself, taken together, constitute a security agreement within the meaning of Ohio Revised Code § 1309.203. While we are aware that other courts have come to the opposite conclusion, we are also in the company of many courts which have reached the same conclusion. *See e.g., Hall v. Hopkins (In re Jacobs)*, No. 04-42387, 2006 WL 4451566, at *4 (Bankr. D. Idaho Feb. 10, 2006) (finding signed application for certificate of title and certificate of title noting lienholder sufficient to create security interest under Idaho Code § 28-9-203); *Roan v. Murray*, 556 N.W.2d 893, 895 (Mich. Ct. App. 1996) (holding that application for certificate of title signed by debtor and noting lienholder constitutes security agreement); *Simplot v. William C. Owens, M.D., P.A.*, 805 P.2d 449, 452 (Idaho 1990) (holding notation in promissory notes that bus was security together with endorsement and delivery of certificate of title constituted security agreement); *Bay State Drywall, Inc. v. Chicopee Sav. Bank*, 429 N.E.2d 1138, 1142 (Mass. 1982) (application for transfer of title which lists lienholder meets writing requirement for security interest to attach); *In re McCormick*, 24 B.R. at 720 (application for certificate of title and certificate of title that both listed secured creditor satisfied security agreement requirement); *Kreiger v. Hartig*, 527 P.2d 483, 486 (Wash. Ct. App. 1974) (finding application for transfer of title signed by debtor sufficient to create security interest); *Clark v. Vaughn*, 504 S.W.2d 550, 553 (Tex. Civ. App. 1973) (holding debtor signed certificate of title sufficient to constitute a

---

[7] To the extent that our holding in this case cannot be distinguished from the holding in *DeVincent* based on the factual difference between the two cases, we respectfully disagree with that portion of the court's analysis in *DeVincent*.

security agreement).[8] *Wray v. Estate of Wray*, No. 9820, 1996 WL 268382 (Tenn. Ct. App. May 22, 1996) (application for certificate of title noting vehicle lien and bill of sale sufficient to give lienholder a security interest in vehicle under Tennessee version of UCC 9-203).

In the present case, the application for a certificate of title is a writing signed by the Debtor and sworn to and subscribed in the presence of a notary. The application specifically identifies the collateral, the Toyota RAV 4 with its vehicle identification number, and instructs the State of Ohio to issue a title showing O'Keefe as lienholder. The application includes the following printed language regarding liens on the motor vehicle:

> The following is a full statement of all liens on said motor vehicle.
> <u>If no lien, state "none"</u>.  If more than one lien, attach statement of all
> additional liens.

In handwriting following the words "Lienholder" and "Address" are: "VERONICA OKEEFE" and "21626 N. 156 DR. Sun City W AZ 85375" respectively. Unlike simple financing statements, which are often filed in anticipation of a *possible* loan and security agreement, an application for a certificate of title  is not completed unless there is an actual purchase or transfer of a motor vehicle. When the Debtor signed the application for certificate of title, the form required her to list "a full statement of all liens on said motor vehicle." We can fathom no reason why the Debtor would have signed the application for certificate of title identifying O'Keefe as the lienholder if she did not intend to grant a security interest to O'Keefe in the vehicle. Also distinguishing the facts in the present case from the simple financing statement in *Silver Creek* is the requirement that the application for certificate of title be sworn to and subscribed in the presence of a notary. Ohio Rev. Code § 4505.06. This requirement also helps ensure that false liens are not placed on a certificate of title. Moreover, in situations where the placement of such a lien was done with an intent to

---

[8] *But see Shelton v. Erwin (In re Shelton)*, 472 F.2d 1118, 1120 (8th Cir. 1973) (holding bill of sale  and application for certificate of title identifying lienholder insufficient under Missouri's adoption of Article 9 of the UCC to create a security interest); *In re Wyatt*, 338 B.R. at 82 (finding handwritten contract identifying mobile home, purchase price and terms of payment together with certificate of title noting lienholder were insufficient to create security interest in mobile home); *Cole v. Miller (In re Miller)*, 320 B.R. 911, 915-16 (Bankr. E.D. Mo. 2005) (no security interest created in vehicle where only documents were application for title and certificate of title); *White v. Household Fin. Corp.*, 302 N.E.2d 828, 837 (Ind. Ct. App. 1973) (promissory note and certificate of title insufficient to create security interest).

hinder, delay, or defraud or for less than a reasonably equivalent value, a bankruptcy trustee would still have the power to avoid such a transfer under 11 U.S.C. § 548.

We therefore hold that the Debtor's application for certificate of title and certificate of title indicate that the parties intended to create a security interest and that the written application for certificate of title constitutes a security agreement within the meaning of Ohio Rev. Code § 1309.203. To find otherwise would place undue emphasis on formalism and be contrary to the general principle that the UCC be "liberally construed and applied to promote [its] underlying purposes and policies[,]" including simplification and modernization of" the law governing commercial transactions." Ohio Rev. Code § 1301.02(A) and (B)(1).

Although O'Keefe did not file a cross-motion for summary judgment, the panel sees no reason to require O'Keefe to file such a motion before the bankruptcy court following remand, given the particular circumstances of this case. The dispositive issue has been fully briefed, and counsel for both parties conceded in oral argument before the bankruptcy court that the facts were not in dispute.[9] *See K.E. Resources, Ltd. v. BMO Fin., Inc. (In re Century Offshore Mgmt. Corp.)*, 119 F.3d 409, 412 (6th Cir. 1997) (affirming decision of bankruptcy court which entered summary judgment in favor of nonmoving party after parties fully briefed the determinative issue and conceded that no facts were in dispute). Moreover, just as the Sixth Circuit noted in analyzing the lien priority in *Century Offshore Management*, "It seems reasonable to expect the [nonmoving party] to recognize that if [its] claim is not superior to [the moving party's claim], it is inferior." *Id.*

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court granting summary judgment in favor of the Trustee is REVERSED, and the bankruptcy court is directed to enter judgment in favor of O'Keefe on the Trustee's adversary complaint.

---

[9] Transcript regarding Feb. 22, 2010, hearing re: Summary Judgment at 4, 7-8 (May 12, 2010) (Docket #43).